IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LARRY A. MCMILLAN,

    *Plaintiff*,

    v.

KANSAS CITY LIFE INSURANCE
COMPANY,

    *Defendant*.

Civil No. 1:22-cv-01100-ELH

**MEMORANDUM OPINION**

Plaintiff Larry A. McMillan filed a putative class action complaint against defendant Kansas City Life Insurance Company ("KCLI" or "KCL"), alleging multiple breach of contract claims and conversion with respect to universal and variable universal life insurance policies issued by KCLI.  *See* ECF 1 (the "Complaint"). He has included his insurance policy as an exhibit. ECF 1-1 (the "Policy").  According to plaintiff, defendant has breached his Policy and the policies of others ("Class Policies") (collectively, the "Policies") by assessing charges in excess of amounts authorized by the insurance policies.  *Id.*[1]

The Complaint contains five counts.  Count I alleges breach of contract.  According to plaintiff, KCLI breached the insurance contract by improperly calculating monthly cost of insurance rates using factors not authorized by the Policies, and then deducting those charges from accumulated values. ECF 1, ¶¶ 62–70. Count II alleges breach of contract by "deducting unauthorized expense charges from the accumulated values . . . ." *Id.* ¶ 73. Count III alleges breach of contract by failing to reduce the cost of insurance rates despite improved mortality expectations. *Id.* ¶¶ 75–79. Count IV alleges conversion.  *Id.* ¶¶ 80-88.  According to plaintiff, KCLI converted

---

[1] Jurisdiction is premised on diversity of citizenship, pursuant to 28 U.S.C. § 1332.  ECF 1, ¶ 10.

the property interests of plaintiff and the class in their accumulated values by deducting charges exceeding the amounts authorized by the Policies. ECF 1, ¶¶ 81–89. Count V asserts a claim for declaratory and injunctive relief.  In particular, plaintiff seeks a declaration that defendant is in material breach of the Policy and the Class Policies, and an injunction to enjoin KCLI from further breach. *Id.* ¶¶ 89-93. Plaintiff also seeks both compensatory and punitive damages, attorney's fees, and costs.  *Id.* at 20.

Defendant has moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  ECF 24.  The motion is supported by a memorandum. ECF 25 (collectively, the "Motion to Dismiss").  Plaintiff opposes the Motion to Dismiss (ECF 35, the "Opposition").  In the Opposition, plaintiff "requests leave to amend to include [new factual] allegations if the Court concludes Plaintiff's present allegations are insufficient to plausibly allege . . . .  punitive damages." ECF 35 at 33. Defendant has replied. ECF 33 (the "Reply").

Thereafter, plaintiff filed a "Motion for Leave to File a Surreply in Opposition to Defendant's Motion to Dismiss." ECF 37. It is supported by a memorandum. ECF 37-2 (collectively, the "Surreply Motion"). The proposed Surreply is docketed at ECF 37-1. Defendant opposes the Surreply Motion. ECF 38. Plaintiff has replied. ECF 39.

Notably, the issues in this case have been litigated in other courts.  ECF 1, ¶¶ 6, 48.  *See Fine v. Kansas City Life Ins. Co.*, SSS-22-02071, ___ F. Supp. 3d ___, 2022 WL 4240901 (C.D. Cal. Sept. 14, 2022); *Karr v. Kansas City Life Ins. Co.,* JMT-1916-26645, 2022 WL 633903 (Mo. Cir. Ct. Feb. 22, 2022); *Meek v. Kansas City Life Ins. Co*., BP-19-000472, 2022 WL 499049 (W.D. Mo. Feb. 7, 2022); *Sheldon v. Kansas City Life Ins. Co.*, SRB-19-00899, 2020 WL 8270387 (W.D. Mo. Jan 15, 2020) (remanded to the Circuit Court of Jackson County, Missouri).

No hearing is necessary to resolve the motions. *See* Local Rule 105.6. For the reasons that follow, I will grant the Surreply Motion. And, I shall grant the Motion to Dismiss in part and deny it in part. I shall also grant leave to amend.

## I.      Background[2]

Plaintiff brings this case as a class action on behalf of himself and a class of similarly situated persons who own or owned certain universal and variable universal life insurance policies issued by KCLI in the State of Maryland. ECF 1, ¶ 5. According to plaintiff, the Policies in issue are all "materially the same . . . ." *Id.* ¶ 1.

On June 25, 1993, plaintiff purchased from KCLI a "Flexible Premium Adjustable Death Benefit Life Policy — Nonparticipating," bearing policy number 2558330, for the specified amount of $50,000. *Id.* ¶ 12; ECF 1-1. Plaintiff is both the owner and the insured under the Policy. ECF 1, ¶ 13. KCLI administers all aspects of the Policies, including collecting premiums and "determining, assessing, and deducting policy charges." *Id.* ¶ 19.

In addition to a death benefit, the Policy provides an accumulated value, which is "an investment, savings, or interest-bearing component that accumulates value over time." *Id.* ¶ 21. The insured policyholder pays monthly premiums that are deposited into the accumulated value, and the insurer deducts certain amounts from the accumulated value, as authorized by the terms of each policy. *Id.* ¶ 22. The deductions include a cost of insurance ("COI") and expenses charges.

---

[2] At this juncture, the Court assumes the truth of the allegations stated in the Complaint. *See Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019).

In my citations to the parties' submissions, I cite to the electronic pagination. However, the electronic pagination does not always correspond to the page number imprinted on a given submission.

ECF 1, ¶¶ 25-32.  Plaintiff alleges that defendant holds the accumulated value in trust for each policyholder. *Id.* ¶ 23.

The Policy defines "we," "our," and "us" to mean KCLI.  Section 11 of the Policy is titled "Guaranteed Policy Values".  ECF 1-1 at 14.  Section 11.2 is titled "Accumulated Value."  It provides, *id.*:

> On each monthly anniversary day the accumulated value will be equal to:
> $$A + B + C - D - E$$

> On any day other than a monthly anniversary day, the accumulated value will be equal to:
> $$A + B + C - D$$

> "A" is the accumulated value on the preceding monthly anniversary day.

> "B" is the net premiums received since the preceding monthly anniversary day.

> "C" is interest on "A" from the preceding monthly anniversary day plus interest on each net premium in "B" from the date of receipt of each premium at our Home Office.

> "D" is all partial withdrawals since the preceding monthly anniversary day and a pro rata portion of one month's interest to the date of calculation.

> "E" is the monthly deduction, as described in Section 11.4, for the month beginning on that monthly anniversary day.

Section 3 of the Policy is titled "Expense And Surrender Charges."  ECF 1-1 at 6.  It permits the defendant to deduct a "Premium Expense Charge" of 5.0% from each premium payment.  *Id.*; *see* ECF 1, ¶ 26.  The monthly expense charge is $5.00. ECF 1-1 at 6; *see* ECF 1, ¶ 28.

Section 11.4 of the Policy is titled "Monthly Deduction."  It permits the defendant to take a "monthly deduction" from the accumulated value, which "is equal to the cost of insurance, as described in Section 11.5, and the cost of any additional benefits provided by riders for the policy month plus the monthly expense charge." ECF 1-1 at 14; *see* ECF 1, ¶ 27.

The premium expense charge and the monthly expense charge are the only charges defined by the Policy. ECF 1, ¶ 30. Section 5.11 of the Policy defines "Expense Charges" as "[t]he amount we deduct to cover our expenses. The premium expense charge is the amount we deduct from each premium payment. The monthly expense charge is included in the monthly deduction . . . ." ECF 1-1 at 9; *see* ECF 1, ¶ 29.

Defendant is also authorized to deduct from the accumulated value a separate charge for the Cost of Insurance. ECF 1, ¶ 31; *see* ECF 1-1 at 9, 14. The COI is defined in Section 5.10 of the Policy, titled "Cost of Insurance," ECF 1-1 at 9, as follows:

> The charge we make for providing pure insurance protection using the current cost of insurance rates for this policy. It does not include the cost of any additional benefits provided by riders.

*See also* ECF 1, ¶ 32.

Section 11.5 is also titled "Cost of Insurance."  ECF 1-1 at 14.  It states, in part, *id.*at 14-15:

> The cost of insurance on any monthly anniversary day is equal to:

$$Q \; x \; (R - S)$$

> "Q" is the cost of insurance rate (as described in Section 4.)

> "R" is the Insured's death benefit on that day divided by no less than 1.0036748.

> "S" is the accumulated value, as described in Section 11.2, prior to subtracting the cost of insurance.

*See also* ECF 1, ¶ 33.

Section 4 of the Policy is titled "Monthly Cost of Insurance."  ECF 1-1 at 7.  The monthly COI rates "on each monthly anniversary day are based on the Insured's age, sex and risk class." *Id.*; *see* ECF 1, ¶ 34. The COI rates are "determined" by the insurer based on its "expectations as to future mortality experience."  ECF 1-1 at 7. But, the Policy expressly bars an increase in the

COI rate to enable defendant to recover for losses or for a decrease "to distribute gains" realized by defendant "prior to the charge." ECF 1-1 at 7.

Plaintiff asserts that age, sex, and risk class are factors commonly used to determine mortality expectations and COI. ECF 1, ¶¶ 35-37. But, according to plaintiff, defendant uses unlisted, non-mortality factors to determine the COI, and it has not updated the COI rate based on improved mortality. *Id.* ¶¶ 38, 39. Therefore, plaintiff argues that defendant has repeatedly breached the Policy by charging higher than authorized insurance rates and deducting impermissibly high amounts from the accumulated values. *Id.* ¶¶ 40-42.

Additional facts are included, *infra*.

## II.      Motion for Surreply and Timeliness of New Arguments

As noted, plaintiff filed a Surreply Motion (ECF 37) and the proposed Surreply. ECF 37-1. In the Surreply Motion, plaintiff contends that a Surreply is necessary because defendant's Reply, "for the first time, raised two new arguments." ECF 37 at 2.

Specifically, plaintiff alleges that, in the Reply, defendant "conduct[ed] a choice-of-law analysis regarding Plaintiff's conversion claim for the first time," ECF 37-2 at 3, and also, for the first time, discussed the relevance of the policy at issue in *Karr*, 2022 WL 633903, ECF 37-2 at 4. Thus, plaintiff asserts that he will have no opportunity to address defendant's flawed choice-of-law analysis or defendant's incorrect assertion that the *Karr* court did not interpret the same policy at issue here, unless he is permitted to file a surreply. *Id.* at 3-4.

Local Rule 105.2(a) provides that a party is not permitted to file a surreply without permission of the court. Although filing of a surreply "is within the Court's discretion, *see* Local Rule 105.2(a), they are generally disfavored." *EEOC v. Freeman*, 961 F. Supp. 2d 783, 801

(D. Md. 2013), *aff'd in part*, 778 F.3d 463 (4th Cir. 2015); *see also, e.g.*, *Chubb & Son v. C & C Complete Servs., LLC,* 919 F. Supp. 2d 666, 679 (D. Md. 2013).

"The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered." *Clawson v. FedEx Ground Package Sys.*, Inc., 451 F. Supp. 2d 731, 734 (D. Md. 2006).  Nonetheless, "a district court may consider an argument raised for the first time on reply under appropriate circumstances."  *De Simone v. VSL Pharmaceuticals*, 36 F.4th 518, 531 (4th Cir. 2022). In particular, the Fourth Circuit has instructed that a district court may consider an argument raised for the first time in a reply brief where the "untimely argument [is] 'intimately related' to the original grounds for the motion . . . ." *Id.* (quoting *Powell v. United States*, PJM-16-2960, 2017 WL 3172831 at *3 (D. Md. July 26, 2017)). Further, a "non-movant's opportunity to contest an untimely argument in a sur-reply supports a district court's decision to consider the untimely argument."  *De Simone*, 36 F.4th at 531 (citing *Clawson*, 451 F. Supp. 2d at 735).

A surreply is ordinarily permitted when the party seeking to file the surreply "would be unable to contest matters presented to the court for the first time" in the opposing party's reply. *Clear Channel Outdoor, Inc. v. Mayor & City Council of Baltimore*, 22 F. Supp. 3d 519, 529 (D. Md. 2014) (quotations and citations omitted).  Conversely, a surreply is usually not permitted if the content is merely responsive to an issue raised in the opposition.  *See Khoury v. Meserve*, 268 F. Supp. 2d 600, 605-06 (D. Md. 2003).

I shall consider the substance of all arguments raised in defendant's Reply (ECF 36). Therefore, in my discretion, I shall permit plaintiff to file the Surreply.  In the absence of the Surreply, plaintiff would have no opportunity to address all of the issues raised in the Reply.

### III.   Legal Standards

### A.  Rule 12(b)(6)

As noted, KCI has moved to dismiss the suit, pursuant to Fed. R. Civ. P. 12(b)(6).  A defendant may test the legal sufficiency of a plaintiff's complaint by way of a motion to dismiss under Rule 12(b)(6).  *Nadendla v. WakeMed*, 24 F.4th 299, 304-05 (4th Cir. 2022); *Fessler v. Int'l Bus. Machs. Corp.*, 959 F.3d 146, 152 (4th Cir. 2020); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom., McBurney v. Young*, 569 U.S. 221 (2013).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  *See Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002).  That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The purpose of the rule is to provide the defendant with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570*; see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); *see also Nadendla*, 24 F.4th at 304-

05; *Fauconier v. Clarke*, 996 F.3d 265, 276 (4th Cir. 2020); *Paradise Wire & Cable*, 918 F.3d at 317-18; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam). But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However, "a court is not required to

accept legal conclusions drawn from the facts." *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010).  "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought.  *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012). But, "[m]ere recitals of a cause of action, supported only by conclusory statements, are insufficient to survive" a Rule 12(b)(6) motion. *Morrow v. Navy Federal Credit Union*,  2022 WL 2526676, at *2 (4th Cir. July 7, 2022).

In connection with a Rule 12(b)(6) motion, courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (citation omitted); *see Bing v. Brio Sys.*, LLC, 959 F.3d 605, 616 (4th Cir. 2020).  But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'"  *Goodman*, 494 F.3d at 464 (emphasis in *Goodman*) (quoting *Forst*, 4 F.3d at 250).

A plaintiff may not cure a defect in a complaint or otherwise amend a complaint by way of an opposition to a motion.  *See, e.g., So. Walk at Broadlands Homeowner's Ass'n, Inc. v.*

*OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing or oral advocacy."); *Glenn v. Wells Fargo Bank, N.A.*, DKC-3058, 2016 WL 3570274 at *3 (D. Md. July 1, 2016) (declining to consider declaration attached to brief opposing motion to dismiss because, among other things, it included allegations not alleged in the suit); *Zachair Ltd. v. Driggs*, 965 F. Supp. 741, 748 n. 4 (D. Md. 1997) (stating that a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"), *aff'd*, 141 F.3d 1162 (4th Cir. 1998); *Mylan Labs., Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991) ("'[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss'") (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984)), *aff'd*, 2 F.3d 56 (4th Cir. 1993).

When a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are generally "limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448); *see Goines*, 822 F.3d at 166 (a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits."); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).   In contrast, the court ordinarily "may not consider any documents that are outside of the complaint, or not expressly incorporated therein[.]"

*Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed. v. Town of Gilbert*, 576 U.S. 155 (2015); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

And, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167. Of import here, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Id.* Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*[3]

On this basis, I may consider the Policy, as it is an exhibit to the Complaint and integral to it.

---

[3] Under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019); *Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 558 (2017); *Kensington Volunteer Fire Dep't v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011)) (emphasis in original) (citation omitted); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

## B. Contract Construction

Principles of contract law govern the Policies at issue.  The rights and obligations of the parties are determined by the terms of the Policy, "unless a statute, regulation or public policy is violated thereby." *Columbia Town Ctr. Title Co. v. 100 Inv. Ltd. P'ship.*, 203 Md. App. 61, 97, 36 A.3d 985, 1006 (2012).

Generally speaking, Maryland applies the law of the state where the contract was formed ("*lex loci contractus*"), unless the parties to the contract agreed to be bound by the law of another state.  *See, e.g. Cunningham v. Feinberg*, 441 Md. 310, 326, 107 A.3d 1194, 1204 (2015); *Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 618, 925 A.2d 636, 648 (2007); *Am. Motorists Ins. Co. v. ARTRA Grp., Inc.*, 338 Md. 560, 573, 659 A.2d 1295, 1301 (1995); *TIG Ins. Co. v. Monongahela Power Co.*, 209 Md. App. 146, 161, 58 A.3d 497, 507 (2012), *aff'd*, 437 Md. 372, 86 A.3d 1245 (2014).[4]  "For choice-of-law purposes, a contract is made where the last act necessary to make the contract binding occurs."  *Konover Prop. Tr., Inc. v. WHE Assocs.*, 142 Md. App. 476, 490, 790 A.2d 720, 728 (2002) (citing *Commercial Union Ins. Co. v. Porter Hayden Co.*, 116 Md. App. 605, 672, 698 A.2d 1167, 1200 (1997), *cert. denied*, 348 Md. 205, 703 A.2d 147 (1997)).

In the context of insurance contracts, Maryland courts have held that the last act necessary is "[t]ypically ... where the policy is delivered and the premiums are paid." *Sting Sec., Inc. v. First*

---

[4] In the general election held in November 2022, the voters of Maryland approved a constitutional amendment to change the name of the Maryland Court of Appeals to the Supreme Court of Maryland. And, the voters also approved changing the name of the Maryland Court of Special Appeals to the Appellate Court of Maryland. These changes went into effect on December 14, 2022. *See* Press Release, Maryland Courts, Voter-approved constitutional change renames high courts to Supreme and Appellate Court of Maryland (Dec. 14, 2022), https://www.courts.state.md.us/media/news/2022/pr20221214#:~:text=Effective%20immediately %2C%20the% 20Court% 20of,the%20Appellate% 20Court% 20of% 20Maryland.

To avoid confusion, I will refer to the names of the courts as they existed when the cited cases were decided.

*Mercury Syndicate, Inc.*, 791 F. Supp. 555, 558 (D. Md. 1992*); see also TIG Ins. Co. v. Monongahela Power Co.*, 209 Md. App. 146, 161-162, 58 A.3d 497, 507 (2012) (noting that "Maryland appellate courts have consistently held that '[t]he locus contractu of an insurance policy is the state in which the policy is delivered and the premiums are paid,'") (quoting *Cont'l Cas. Co. v. Kemper Ins. Co.*, 173 Md. App. 542, 547-548, 920 A.2d 66, 69 (2007)). Here, plaintiff has indicated that his life insurance application was signed, that payments were made, and the Policy was established in the State of Maryland. ECF 1 ₱ 11. Further, the Policy does not contain a choice of law provision. ECF 1-1. Thus, I will construe the policy in light of Maryland law.

Maryland law is well settled that "the interpretation of an insurance policy is governed by the same principles generally applicable to the construction of other contracts." *Mitchell v. AARP*, 140 Md. App. 102, 116, 779 A.2d 1061, 1069 (2001); *see Connors v. Gov't Emps. Ins. Co*., 442 Md. 466, 480, 113 A.3d 595, 603 (2015); *Moscarillo v. Prof'l Risk Mgmt. Servs*., Inc., 398 Md. 529, 540, 921 A.2d 245, 251 (2007); *State Farm Mut. Ins. Co. v. DeHaan*, 393 Md. 163, 193, 900 A.2d 208, 225-26 (2006); *MAMSI Life & Health Ins. Co. v. Callaway*, 375 Md. 261, 279, 825 A.2d 995, 1005 (2003); *see also Travelers Indemnity Co. of Am. v. Jim Coleman Auto. of Columbia, LLC*, 236 F. Supp. 2d 513, 514 (D. Md. 2002). Accordingly, "'ordinary principles of contract interpretation apply.'" *Megonnell v. United Servs. Auto. Ass'n*, 368 Md. 633, 655, 796 A.2d 758, 772 (2002) (citation omitted); *see Dutta v. State Farm Ins. Co*., 363 Md. 540, 556, 769 A.2d 948, 957 (2001); *Cheney v. Bell Nat'l Life Ins. Co.*, 315 Md. 761, 766, 556 A.2d 1135, 1138 (1998).

The primary principle of contract construction "is to apply the terms of the insurance contract itself.'" *Universal Underwriters Ins. Co. v. Lowe*, 135 Md. App. 122, 137, 761 A.2d 997, 1005 (2000) (quoting *Bausch & Lomb, Inc. v. Utica Mut. Ins. Co*., 330 Md. 758, 779, 625 A.2d 1021 (1993)). In the context of a coverage issue, the Maryland courts have said that the insurance

policy, including endorsements, "must be construed as a whole and 'the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution' must be examined." *United Servs. Auto. Ass'n v. Riley*, 393 Md. 55, 79, 899 A.2d 819, 833 (2006) (quoting *Chantel Assocs. v. Mt. Vernon Fire Ins. Co.*, 338 Md. 131, 142, 656 A.2d 779, 784 (1995)); *see United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 495 (4th Cir. 1998); *Pacific Indem. Co. v. Interstate Fire & Cas. Co.*, 302 Md. 383, 388, 488 A.2d 486, 488 (1985).

The court bears responsibility for ascertaining the scope and limitations of an insurance policy. *See Fister v. Allstate Life Ins. Co*., 366 Md. 201, 210, 783 A.2d 194, 199 (2001); *Mitchell v. Md. Cas. Co*., 324 Md. 44, 56, 595 A.2d 469, 475 (1991). As the Maryland Court of Appeals has explained, judicial "interpretation of insurance contracts to determine the scope and limitations of the insurance coverage, like any other contract, begins with the language employed by the parties." *Callaway*, 375 Md. at 279, 825 A.2d at 1005.

Generally, Maryland courts "analyze the plain language of [an insurance] contract according to the words and phrases in their ordinary and accepted meanings as defined by what a reasonably prudent lay person would understand them to mean." *Universal Underwriters Ins. Co*., 135 Md. App. at 137, 761 A.2d at 1005; *see Litz v. State Farm Fire & Cas. Co*., 346 Md. 217, 224, 695 A.2d 566, 569 (1997); *accord Capital City Real Estate, LLC v. Certain Underwriters at Lloyd's*, 788 F.3d 375, 379 (4th Cir. 2015). In other words, when interpreting an insurance policy's terms, the court interprets the policy "as a whole, according words their usual, everyday sense, giving force to the intent of the parties, preventing absurd results, and effectuating clear language." *Kapiloff*, 155 F.3d at 495. The test for that "usual, everyday sense" is "what meaning a reasonably prudent layperson would attach to the term." *See Pacific Indem. Co.*, 302 Md. at 387, 488 A.2d at 488.

Where the insurance policy is unambiguous, the meaning of the terms is determined by the court as a matter of law. *Clendenin Bros. Inc. v. U.S. Fire Ins. Co.*, 390 Md. 449, 459, 889 A.2d 387, 393 (2006); *see Pa. Nat. Mut. Cas. Ins. Co. v. Roberts*, 668 F.3d 106, 118 (4th Cir. 2012). "'If the policy's language is clear and unambiguous, the Court will assume the parties meant what they said.'" *Capital City*, 788 F.3d at 379 (quoting *Perini/Tompkins Joint Venture v. Ace Am. Ins. Co.*, 738 F.3d 95, 101 (4th Cir. 2013)). And, "'a court has no alternative but to enforce those terms.'" *Megonnell*, 368 Md. at 655, 796 A.2d at 772 (quoting *Dutta*, 363 Md. at 557, 769 A.2d at 1138).

A contract is not ambiguous merely because the parties do not agree on its meaning. *Fultz v. Shaffer*, 111 Md. App. 278, 299, 681 A.2d 568, 578 (1996). A policy term is considered "ambiguous if, to a reasonably prudent person, the term is susceptible to more than one meaning." *Cole v. State Farm Mut. Ins. Co.*, 359 Md. 298, 306, 753 A.2d 533, 537 (2000); *see Auction & Estate Representatives, Inc. v. Ashton*, 354 Md. 333, 340, 731 A.2d 441, 444-45 (1999); *see also Cochran v. Norkunas*, 398 Md. 1, 17, 919 A.2d 700, 710 (2007); *Nationwide Mut. Ins. Co. v. Regency Furniture, Inc.*, 183 Md. App. 710, 723, 963 A.2d 253, 260 (2009).

If a contractual term is ambiguous, the court may consult "extrinsic sources" to ascertain the meaning. *Cole*, 359 Md. at 305, 753, A.2d at 537. Maryland courts "'will ordinarily avoid interpreting contracts in a way that renders its provisions superfluous.'" *Calomiris v. Woods*, 353 Md. 425, 442, 727 A.2d 358, 366 (1999) (quoting *State Highway v. Bramble*, 351 Md. 226, 237, 717 A.2d 943, 948 (1998)). Nor may the court "accept an interpretation that would nullify" one phrase "to substitute it with a contradictory formulation." *Calomiris*, 353 Md. at 442, 727 A.2d at 366. And, the court should give effect to each contract clause so that "'a court will not find an interpretation which casts out or disregards a meaningful part of the language of the writing unless

no other course can be sensibly and reasonably followed.'" *Muhammad v. Prince George's Cty. Bd. of Educ.*, 246 Md. App. 349, 364, 228 A.3d 1170, 1179 (2020) (citation omitted), *cert. denied*, 471 Md. 81, 238 A.3d 273 (2020).

In the absence of "an indication that the parties intended to use words in the policy in a technical sense, they must be accorded their customary, ordinary, and accepted meaning.'" *Md. Cas. Co. v. Blackstone Intern. Ltd*., 442 Md. 685, 695, 114 A.3d 676, 681 (2015) (quoting *Mitchell*, 324 Md. at 56, 595 A.2d at 475). However, if there is evidence that the parties intended to ascribe a special or technical meaning to certain words used in an insurance contract, those words are construed in accordance with that understanding. *Valliere v. Allstate Ins. Co*., 324 Md. 139, 142, 596 A.2d 636, 638 (1991) ("When a policy defines a term in a manner which differs from the ordinary understanding of that term, the policy definition controls."); *see also Dutta*, 363 Md. at 556, 769 A.2d at 957.

Notably, "'unlike the majority of other states, Maryland does not follow the rule that insurance policies are to be most strongly construed against the insurer.'" *Capital City*, 788 F.3d at 379 (quoting *Empire Fire & Marine Ins. Co. v. Liberty Mut. Ins. Co*., 117 Md. App. 72, 97, 699 A.2d 482, 494 (1997)); *see Beretta, U.S.A., Corp. v. Fed. Ins. Co.*, 117 F. Supp. 2d 489, 493 (D. Md. 2000); *Megonnell*, 368 Md. at 655, 796 A.2d at 771; *Bushey v. N. Assurance Co. of Am.*, 362 Md. 626, 632, 766 A.2d 598, 601 (2001); *Collier v. MD-Individual Practice Ass'n*, 327 Md. 1, 5, 607 A.2d 537, 539 (1992). But, "if ambiguity is determined to remain after consideration of extrinsic evidence, 'it will ordinarily be resolved against the party who drafted the contract,' where no material evidentiary factual dispute exists." *Clendenin Bros*., 390 Md. at 459-60, 889 A.2d at 394; *see Callaway*, 375 Md. at 280, 825 A.2d at 1005-06 ("[W]hen a term in an insurance policy is found to be ambiguous, the court will construe that term against the drafter of the contract which

is usually the insurer."). In other words, where ambiguous language remains, the court "construe[s] that language 'liberally in favor of the insured and against the insurer *as drafter of the instrument*.'" *Connors*, 442 Md. at 481-83, 113 A.3d at 603-05 (emphasis in original) (quoting *Megonnell*, 368 Md. at 655, 796 A.2d at 772); *see Columbia Town Center Title Co.*, 203 Md. App. at 97, 36 A.3d at 1006.

Of import here, "in the context of a motion to dismiss, the construction of an ambiguous contract 'is a question of fact which, if disputed, is not susceptible of resolution under a motion to dismiss for failure to state a claim.'" *Chartier v. M. Richard Epps, P.C.*, ELH-14-1071, 2014 WL 4748629, at *13 (quoting *Wolman v. Tose*, 467 F.2d 29, 34 (4th Cir.1972)). "At the pleading stage, if a contract is found to be ambiguous, a defendant's motion to dismiss must be denied." *View Point Med. Sys., LLC v. Athena Health, Inc*., 9 F. Supp. 3d 588, 600 (D. Md. 2014); *see also Spotswood v. Hertz Corp.*, WMN-16-1200, 2016 WL 6879938, at *17 (D. Md. Nov. 22, 2016). In any event, it "is not the province of the court to rewrite the terms of a contract so as to avoid hardship to a party, or because one party has become dissatisfied with its terms." *Phoenix Servs. Ltd. P'ship v. Johns Hopkins Hosp.*, 167 Md. App. 327, 393, 892 A.2d 1185, 1224 (2006).

## IV.   Discussion

### A.  Breach of Contract (Counts I, II, and III)

Count I alleges that KCLI breached the Policy by using unauthorized and unlisted non-mortality factors to determine monthly COI rates. ECF 1, ¶¶ 65-68. Count II alleges that KCLI breached the Policy by "loading monthly cost of insurance rates with unlisted expense factors in excess of the maximum expense charges expressly authorized" by the Policy. *Id.* ¶ 72. And, Count III alleges that KCLI breached the Policy by failing to reduce monthly COI rates to reflect "improved mortality expectations." *Id.* ¶ 77.

KCI seeks dismissal of all three counts on the basis that "the plain language of the Policy does not constrain" defendant's "ability to determine COI rates." ECF 25 at 13; *see id.* at 15.[5]  The contention is discussed in more detail, *infra*.

In the Opposition, plaintiff notes that other courts, including the court in *Karr v. Kansas City Life Ins. Co., supra*, 2022 WL 633903, have construed "the *same* life insurance policies at issue in this case." ECF 35 at 8 (emphasis in original).  And, plaintiff contends that other courts have found that, as he alleges, "the only reasonable" construction of the Policy is the one he has advanced.  *Id.*

In the Reply, defendant asserts that plaintiff's reliance on *Karr*, 2022 WL 633903, is misplaced, as the action here concerns universal and variable universal life Policies, whereas *Karr* pertained to universal life policies. ECF 36 at 7 (citing ECF 1, ¶¶ 5,6).  In the Surreply, plaintiff notes that plaintiff's Policy is a universal life policy, which is the same type of policy at issue in *Karr*. ECF 37-1 at 8.[6]  In any event, plaintiff contends that universal life and variable universal life policies are "materially identical as to the operation of cost of insurance and expense charge deductions," and the only difference is with respect to "the investment interest." *Id.* n. 8.

The dispute implicates several Policy provisions.  They include Section 3, ECF 1-1 at 6; Section 4, *id.* at 7; Section 5.10, *id.* at 9; Section 5.11, *id.*; Section 5.12, *id.*; Section 11.2, *id.* at 14; Section 11.4, *id.*; and Section 11.5, *id.* at 14-15.

### 1.   COI Calculations and Mortality Factors (Counts I & III)

---

[5] It is not clear how this argument pertains to Count II, concerning the deduction of expense charges.

[6] Indeed, *Karr* concerned plaintiff's "Flexible Premium Adjustable Death Benefit Life Policy — nonparticipating," which is the exact Policy at issue here.  *See* 2022 WL 633903, at *1.

Counts I and II concern KCLI's alleged obligation to consider particular mortality factors in calculating the COI.  Therefore, I will address these counts together.

As indicated, Section 4 of the Policy is titled "Monthly Cost of Insurance."  ECF 1-1 at 7. It states, in part, *id.* (emphasis added):

> The monthly cost of insurance rates used in calculating the cost of insurance on each monthly anniversary day are ***based on*** the Insured's age, sex and risk class.

> The cost of insurance rates used will be determined by us ***based on*** our expectations as to future mortality experience. Any change in the current cost of insurance rates will be on a uniform basis for Insureds of the same age, sex and risk class whose policies have been in force the same length of time.  The current cost of insurance rates will never be increased to recover losses incurred, or decreased to distribute gains realized by [defendant] prior to the change.

> The cost of insurance rates used will not exceed those shown in the tables below . . . .

KCLI insists that the Policy does not require the insurer to determine insurance rates solely on the basis of mortality factors of age, sex, and risk class. ECF 25 at 14. According to defendant, the Policy contains "several explicit COI rate constraints KCL agreed to when it issued the Policy and sold them to policyholders."  *Id.* at 15.  For example, KCL agreed not to increase COI rates to recover for past losses.  ECF 1-1 at 7.  Defendant adds that the Policy would have "made any COI rate limitation or prohibition explicit." ECF 25 at 15.

Plaintiff counters that a reading of the Policy as a whole suggests that the COI rate is exclusively "based on" mortality factors. ECF 18 at 11. Defendant rejects the position that the "based on" language used in the Policy indicates exclusivity. ECF 36 at 20-25. Defendant also contends that the phrases used in the Policy with respect to calculating the COI rate, such as "determined by us" and "our expectations," indicate "the insurer's reservation to itself of broad discretion to determine the COI rates" by using other factors. *Id.* at 24. And, KCI observes that

nothing in the Policy indicates that it is required to adjust the COI rate for future mortality, let alone within a specific time frame. ECF 36 at 24.

The interpretation of the phrase "based on" is critical.  Both parties have cited cases indicating that the term "based on [defendant's] expectations as to future mortality experience" can be interpreted in more than one way.  Some cases suggest that the words indicate that the COI calculation can only consider mortality factors, while others suggest it can also include unlisted factors. *See, e.g., Slam Dunk I, LLC v. Conn. Gen. Life Ins. Co.,* 853 Fed. App'x 451, 455 (11th Cir. 2021) (concluding that the phrase "based on" does not connote exclusivity); *Yue v. Conseco Life Ins. Co.,* 282 F.R.D. 469, 481 (C.D. Cal. 2012) ("The dictionary definition indicates that when a number is 'based on' a variable, that variable is the *principal* or *fundamental* factor in determining the number, not merely one factor among many.") (italics in original).

In *Fine v. Kansas City Life Ins. Co., supra*, 2022 WL 4240901, the Court considered the precise issue raised here.  *Id.* at *4.  In that case, KCLI argued that the phrase "based on" permits the use of unlisted factors and that the list of mortality factors is not exhaustive.  *Id.* The court concluded that, in the context of the policy, "the phrase 'based on' is ambiguous, and at the motion to dismiss stage, it is not for this Court to determine which interpretation . . . is correct."  *Id.* Therefore, the court declined to grant KCI's motion to dismiss on that basis.  *Id.*

*Karr*, 2022 WL 633903, reached a different result as to the same policies, albeit in the context of a summary judgment motion.  There, the court found the COI rate language is unambiguous, and concluded that it does not permit KCLI to use "undisclosed non-mortality factors" in setting monthly COI rates.  *Id.* at 3; *see id.* at *4.

KCLI argues that the Policy's inclusion of several rate constraints indicates that the factors of age, sex, and risk class are not the exclusive considerations.  The *Fine* Court said that the

"argument is similar to the logic of *expressio unius est exclusio alterius*, the statutory interpretation doctrine under which the inclusion of one thing excludes the other." *Fine*, 2022 WL 4240901, at *2; *see* ECF 25 at 14-15 (discussing prohibitions such as the agreement not to increase COI rate to recover past losses).

Maryland recognizes the interpretive canon *expressio unius est exclusio alterius*, which means "the expression of one thing is the exclusion of another." *See Griffin v. Lindsey*, 444 Md. 278, 288, 119 A.3d 753, 758 (2015); *see also Hudson v. Hous. Auth. of Balt. City*, 402 Md. 18, 30, 935 A.2d 395, 402 (2007) (observing that the doctrine is a "fundamental principle of construction, long recognized in Maryland").   Under this canon, "statutory lists are often interpreted as exclusive, so that a court will draw the negative inference that no other items may be added." *Potomac Abatement, Inc. v. Sanchez*, 424 Md. 701, 712, 37 A.3d 972, 978 (2012); *see Griffin*, 444 Md. at 288, 119 A.3d at 759 (discussing cases applying the canon); *see also N.L.R.B. v. SW Gen., Inc.*, 580 U.S. 288 (2017); *Fine*, 2022 WL 4240901, at *2; 2A SUTHERLAND STATUTORY CONSTRUCTION § 47:23 (7th ed) (describing the canon's application); ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 107-11 (2012).[7]

In *Fine*, 2022 WL 4240901, KCI asserted that the Policy did not prohibit use of non-mortality factors, because the Policy "included some express prohibitors but did not include the prohibition against using non-mortality factors to calculate COI . . . ." *Id.* at *2.   However, the canon "has force only when the items expressed are members of an 'associated group or series,' justifying the inference that items not mentioned were excluded by deliberate choice, not

---

[7] With respect to statutes, the Maryland Court of Appeals has cautioned that the doctrine is merely an interpretive tool that should "'never be applied to override the manifest intention of the Legislature.'" *State v. Neiswanger Mgmt. Servs., LLC*, 457 Md. 441, 479, 179 A.3d 941, 964 (2018) (quoting *Kirkwood v. Provident Sav. Bank of Balt*., 205 Md. 48, 55, 106 A.2d 103, 107 (1954)).

inadvertence." *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003). According to the *Fine* Court, KCLI's examples of prohibitions on rates were "not associated with or related to whether KCL may use non-mortality factors to calculate COI." *Fine*, 2022 WL 4240901, at *2; *see* ECF 25 at 14-15. Yet, the specification of age, sex, and risk factors could be interpreted to exclude consideration of unlisted factors when calculating the COI. *Fine*, 2022 WL 4240901, at *3. In ruling on KCI's motion to dismiss, the *Fine* Court said that, "despite the existence of express prohibitions elsewhere in the contract, the Court will not craft from those an express permission to use non-mortality factors to calculate COI." *Id.*

I agree with the reasoning of the *Fine* Court. The canon of *expressio unius est exclusio alterius* lends support for finding ambiguity in the terms of the Policy as to the factors that KCI may use to calculate COI.

With respect to whether KCLI was required to update the COI rate based on improved mortality expectations, defendant argues in its Reply that the Policy's silence as to the timing of, and an obligation to, update the COI as to future mortality expectations indicates that it had no obligation to do so. ECF 36 at 24.

The Policy does not state that COI rates are based only on mortality expectations at the time of contracting. The Policy indicates that the COI rate is "based on expectations as to future mortality experience." ECF 1-1 at 7. As noted by KCI, this provision does not provide a specific time for the adjustment. But, the use of the word ***future*** arguably indicates that the COI rates are to be adjusted. Therefore, the Policy is also ambiguous with respect to defendant's duty to update the COI to reflect future mortality expectations.

In sum, the Policy is ambiguous as to mortality considerations with respect to COI rates. *See* ECF 1-1 at 7, 14-15. Accordingly, I shall deny defendant's Motion to Dismiss Counts I and III of the Complaint.

### 2.   Expense Charge (Count II)

As mentioned, Count II asserts a claim that KCLI breached the terms of the Policy by "loading monthly [COI] rates with unlisted expense factors in excess" of what is "authorized" by the Policy. Defendant argues that "the 'Expense Charges' definition would capture and authorize any alleged unlisted expense factor or loading." ECF 25 at 17. KCI also contends that plaintiff's interpretation of the Policy is erroneous, because he "ignores the contractual definition of 'Expense Charges.'" *Id.* at 15. In particular, KCLI argues that the first sentence of the "Expense Charges" definition authorizes additional and unlisted expense charges. *Id.* at 17.

Plaintiff counters that the definition of "Expense Charges" encompasses two explicitly defined charges, *i.e.,* the "Premium Expense Charge" and the "Monthly Expense Charge." ECF 35 at 12, 19. In his view, to read the "Expense Charges" definition as comprising additional unlisted expenses would render the "Monthly Expense Charge" superfluous. *Id.* at 21.

The Policy defines "Expense Charges" in § 5.11, ECF 1-1 at 9, as follows:

> The amount we deduct to cover our expenses. The premium expense charge is the amount [Defendant] deduct[s] from each premium payment. The monthly expense charge is included in the monthly deduction. These charges are shown on page 5.

As noted, Section 3 of the Policy is titled "Expense And Surrender Charges." Page 5 of the Policy shows the following, ECF 1-1 at 6:



Nothing in the definitions indicates that KCLI is permitted to assess expense charges other than those associated with the defined "Monthly Expense Charge" or "Premium Expense Charge." *See Brawner Builders, Inc. v. Northern Assurance Co. of America*, 637 F. App'x 703, 706 (4th Cir. 2015) ("If a reasonably prudent layperson would attach only one meaning, then the contract is unambiguous, and we may construe it as a matter of law.") (internal citation omitted).  Indeed, KCLI's interpretation of "Expense Charges" would contradict the "Monthly Expense Charge" provision in Section 3, ECF 1-1 at 6, and arguably render the provision meaningless. This is because it would permit defendant to exceed the stated sum, which appears to constitute a cap on the monthly expense.  *See Metropolitan Development Group at Cool Spring, LLC v. Cool Spring Road, LLC*, GJH-20-3237, 2022 WL 951995 at *8 (D. Md. Mar. 30, 2022) ("[C]ourts do not interpret contracts in a manner that would render provisions superfluous or as having no effect.") (internal quotation marks and citation omitted).

Accordingly, I shall deny KCLI's Motion to Dismiss Count II of the Complaint.

### B. Conversion (Count IV)

In Count IV, plaintiff contends that defendant is liable for the common law tort of conversion.  The claim is rooted in defendant's deduction of insurance charges and expense charges, allegedly in excess of the amounts permitted by the terms of the Policy and the Class Policies. ECF 1, ¶¶ 81-82. According to plaintiff, both plaintiff and the proposed Class had a property interest in the funds, which were to be held in trust for the policy owners, and defendant

misappropriated and misapplied the funds. *Id.* ¶¶ 82-84. Further, plaintiff avers that these funds are identifiable through the assistance of expert testimony. Plaintiff seeks both compensatory and punitive damages. *Id.* ¶ 88.

Defendant maintains that Maryland law, rather than Missouri law, applies to the conversion claim, because the applicable law is the jurisdiction where the injured party resides. ECF 36 at 13. KCLI also argues that plaintiff's conversion claim fails under Maryland law as plaintiff "does not allege an 'immediate possessory interest' to the allegedly converted funds and the recovery of an unspecified amount of money does not qualify as conversion under Maryland law." ECF 25 at 5. But, even if Missouri law applies, defendant urges dismissal, arguing that Missouri strongly disfavors conversion claims for money. ECF 36 at 12 n. 4.

Further, defendant argues that plaintiff has not pleaded sufficient facts to support a claim for punitive damages in regard to the alleged conversion. Therefore, KCLI seeks dismissal of the claim for punitive damages. ECF 25 at 1, 11-13.

Plaintiff maintains that Missouri law governs the conversion claim. ECF 35 at 21-23. And, under Missouri law, plaintiff claims that an insurer's unauthorized deduction from a policyholder's account constitutes conversion. *Id.* at 16.

### 1. Choice of Law

The Policy does not contain a choice of law provision. ECF 1-1. Jurisdiction here is predicated on diversity of citizenship. ECF 1, ¶ 10. A federal court sitting in diversity must apply the law of the state in which the court is located, including the forum state's choice of law rules. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007). Therefore, the law of the forum state, Maryland, guides this

Court's choice-of-law analysis. *See Baker v. Antwerpen Motorcars Ltd.*, 807 F. Supp. 2d 386, 389 n.13 (D. Md. 2011).

"For tort claims, Maryland adheres to the First Restatement of Conflict of Laws rule, lex loci delicti commissi, or the law of the place of the harm, to determine the applicable substantive law." *Dunbar v. Biedlingmaier*, DKC-20-0738, 2022 WL 814293 at *3 (D. Md. Mar. 17, 2022) (citing *Naughton v. Bankier*, 114 Md.App. 641, 691 A.2d 712, 716 (1997)). "Under the First Restatement, the place of the harm is defined as 'the state where the last event necessary to make an actor liable for an alleged tort takes place.'" *Wells v. Liddy*, 186 F.3d 505, 521 (4th Cir. 1999) (internal citations omitted).

Liability attaches where money is unlawfully withdrawn from an account holding an accumulated value. *First Union Nat. Bank v. N.Y. Life Ins. & Annuity Corp.,* 152 F. Supp. 2d 850, 854 (D. Md. 2001) (concluding that where check was cashed and delivered, not where it was processed, was dispositive as to choice of law). Plaintiff avers that "KC Life made COI deductions from policyholders' accounts" in Missouri. ECF 35 at 22. KCLI has not disputed this assertion. Therefore, "the last act necessary to complete the tort was the alleged misappropriation of the funds from Plaintiffs' accounts." *Dickman v. Banner Life Ins. Co.*, WMN-16-192, 2016 WL 7383869 at *7 (D. Md. Dec. 21, 2016).

Assuming the truth of plaintiff's allegations, Missouri Law would apply to the conversion claim. This is because, according to the allegations, the last act to consummate the allegedly unlawful withdrawal occurred in Missouri.

However, the choice of law analysis requires a specific factual inquiry. At this juncture, it is unclear whether the facts will alter the choice of law analysis. Indeed, jurists have noted that in complex cases, choice of law analyses can be difficult to conduct at the motion to dismiss stage

and may be better suited for discussion in the context of a motion for summary judgment. *See e.g.,*

*Malinowski v. Lichter Grp., LLC*, WDQ-14-917, 2015 WL 1129522, at *4 (D. Md. Mar. 11, 2015);

*Cleaning Auth., Inc. v. Neubert,* 739 F. Supp. 2d 807, 817-19 (D. Md. 2010).

I turn to discuss Missouri law with respect to the claim of conversion.[8]

### 2.   Conversion Under Missouri Law

Under Missouri law, "'conversion may be proved in one of three ways: (1) by showing a

tortious taking, (2) a use or appropriation by the defendant indicating a claim or right in opposition

to the owner, or (3) a refusal to give up possession on demand.'" *Envirotech, Inc. v. Thomas*, 259

S.W.3d 577, 592 (Mo. Ct. App. 2008) (quoting *Bell v. Lafont Auto Sales*, 85 S.W.3d 50, 54 (Mo.

Ct. App. 2002)); *accord Emerick v. Mutual Benefit Life Ins. Co.*, 756 S.W.2d 513, 525 (Mo. banc

1988). "Specific checks, drafts or notes will support a cause of action for conversion where they

can be described or identified as a specific chattel." *Dayton Constr., Inc. v. Meinhardt*, 882 S.W.2d

206, 208–09 (Mo. Ct. App. 1994).

Generally, conversion is not the appropriate action when the claim is solely for the recovery

of money. *See Capitol Indem. Corp. v. Citizens Nat'l Bank of Ft. Scott, N.A.*, 8 S.W.3d 893, 900

(Mo.Ct.App.2000) (citing *Dillard v. Payne*, 615 S.W.2d 53, 55 (Mo. Sup. Ct. 1981)).  But, "[t]he

---

[8] In *Fine*, 2022 WL 4240901, at *5, the court applied California law and dismissed the conversion claim, without prejudice, because plaintiff did not allege a right to immediate possession. *Id.* at *6. But, the court did not explain why it applied California law.  Of note, from a review of the docket it appears that the parties did not dispute the application of California law. The court also dismissed, without prejudice, the request for punitive damages, as the conversion claim was the sole basis for an award of punitive damages. *Id.*

Plaintiff subsequently filed an amended complaint, alleging a right to immediate possession, *Fine v. Kansas City Life Ins. Co.*, SSS-22-02071, ECF 95 (C.D. Cal. Sept. 20, 2022). KCLI again moved to dismiss the conversion claim, as well as the request for punitive damages. *Id.*, ECF 102. The court denied KCLI's motion to dismiss, finding that plaintiff had adequately pleaded a cause of action for conversion.  *Id.*, ECF 129 (C.D. Cal. Feb. 21, 2023). The court did not reach KCLI's motion to dismiss punitive damages. *Id.*

Missouri Supreme Court has recognized a narrow exception in cases where a plaintiff placed funds 'in the custody of another for a specific purpose,' and the defendant diverts those funds 'for other than such specified purpose [.]'" *Boswell v. Panera Bread Co.*, 91 F. Supp. 3d 1141, 1145 (E.D. Mo. 2015) (internal citation omitted).

*Vogt v. State Farm Life Ins. Co*., NKL-16-04170, 2017 WL 1498073 (W.D. Mo. Apr. 26, 2017), is instructive. In *Vogt,* plaintiff, on behalf of himself and all others similarly situated, alleged conversion based on the defendant's unauthorized COI deductions from the policyholder's account, allegedly in excess of amounts permitted under the policy. According to the plaintiff, the insurer maintained an interest – bearing account in trust for the insured and owned by the insured. The policy permitted the insurer to make monthly deductions from the account, based on factors listed in the policy. The plaintiff claimed, however, that the insurer relied on other factors and deducted more than the policy permitted. The *Vogt* Court concluded that the plaintiff stated a claim for conversion. 2017 WL 1498073, at *6.

Judgment was ultimately entered in favor of the plaintiff, and the insurer appealed. *Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753 (8th Cir. 2020). The Eighth Circuit recognized that money ordinarily is not the subject of a conversion claim. *Id.* at 774. But, it pointed to the exception in Missouri "for funds placed in the custody of another for a specific purpose" that are then diverted. *Id.* It also rejected the claim of the insurer based on the economic loss doctrine, noting that it applies to claims for negligence and breach of warranty. *Id.*

As in *Vogt,* plaintiff alleges that the defendant misappropriated funds from the policyholder account, which were held in trust. ECF 1, ⁋ 82. Further, plaintiff alleges that these funds were to be used, in part, for the specific purpose of paying the defined "Monthly Expense Deduction." *Id.*

at 27; *See* ECF 1-1 at 9. The funds constitute the accumulated value, which is pertinent to the determination of either the death benefit or the cash surrender amount. *Id.* at 9, 15.[9]

The Motion to Dismiss also suggests that plaintiff has not alleged a right to immediate possession. *See* ECF 25 at 6-7 (citing *Ark. Nursing Home Acquisition, LLC v. CFG Comm. Bank*, 460 F. Supp. 3d 621, 646 (D. Md. 2020)). Defendant seems to contend that plaintiff's property interest, as alleged, does not equate to an entitlement to immediate possession, given plaintiff's right to the funds six months after a cash surrender request. ECF 25 at 7 (citing ECF 1-1 at 15); *see Fine*, 2022 WL 4240901, at *6-7. But in *Vogt*, the court said that it is enough that a plaintiff "indisputably had a right to immediate possession of the funds in his account after the six-month period elapsed, years before he brought this action." *Vogt*, 2018 WL 1747336, at *9 (W.D. Mo. Apr. 10, 2018).[10]

The law in Missouri appears to support the conclusion that plaintiff has stated a conversion claim, as plaintiff has adequately pleaded that funds were placed in KCLI's custody for a specific purpose. Accordingly, I shall deny defendant's motion to dismiss Count IV. *See also Karr,* 2022 WL 633903 at *5 (denying motion for summary judgment as to the alleged conversion of universal life insurance policyholder account, in part, because there was no merit to defendant's argument that plaintiff did "not allege a specific and identifiable sum").[11]

---

[9] "The cash surrender value of this policy is: (1) the accumulated value of this policy at the time of surrender; less (2) any applicable surrender charge (shown on page 5); less (3) any indebtedness on this policy." ECF 1-1 at 15, ¶ 11.7.

[10] Defendant asks the Court to consider *Basba v. Liu Xuejie*, PX-19-380, 2021 WL 242495 (D. Md. Jan. 25, 2021). *Basba* cites to *Ark. Nursing*, 460 F. Supp. 3d 621. But, *Basba* does not indicate that immediate possession of intangible monies is a requirement for a claim of conversion.

[11] The law of conversion in Maryland might well lead to a different outcome. But, at this juncture, I shall assume Missouri law applies, for the reasons stated.

### 3. Punitive Damages

Even if plaintiff has stated a claim for conversion, defendant challenges plaintiff's request for punitive damages. ECF 25 at 1. KCI argues that plaintiff has not pleaded sufficient facts that, if true, entitle plaintiff to recover punitive damages. *Id.* Therefore, it seeks "to strike" the request for punitive damages. *Id.*

Assuming that Missouri law applies to the conversion claim, the matter of punitive damages is also a question of Missouri law. *See Ben-Joseph v. Mt. Airy Auto Transporters, LLC*, 529 F. Supp. 2d 604, 608 (D. Md. 2008) ("Maryland courts have held punitive damages to be of a substantive nature.") (citing *Naughton v. Bankier*, 114 Md.App. 641, 691 A.2d 712, 716 (1997)). But, plaintiff concedes that there is no "material deference" under Maryland and Missouri law as to the standard for punitive damages in the context of a conversion claim. ECF 35 at 33 n.13.

Punitive damages compensate the plaintiff for "the heinous nature of the defendant's tortious conduct," punish the defendant for that conduct, and hopefully help to deter others from engaging in similar conduct. *Owens-Illinois, Inc. v. Zenobia*, 325 Md. 420, 452-455, 601 A.2d 633, 649–50 (1992). Under Maryland law, regardless of the theory of recovery, "punitive damages cannot be recovered absent malice." *Saval v. BL Ltd.*, 710 F.2d 1027, 1033 (4th Cir. 1983). Notably, punitive damages "cannot be awarded in a pure breach of contract case." *Sims v. Ryland Group, Inc.*, 37 Md. App. 470, 475, 378 A.2d 1, 4 (1977); *see also Biktasheva v. Red Square Sports, Inc.*, 366 F. Supp. 2d 289, 295 (D. Md. 2005); *Jacques v. First Nat'l Bank of Md.*, 307 Md. 527, 545, 515 A.2d 756, 765 (1986).

Maryland courts have held that "with respect to both intentional and non-intentional torts, . . . . an award of punitive damages must be based upon actual malice, in the sense of conscious and deliberate wrongdoing, evil or wrongful motive, intent to injure, ill will or fraud." *Scott v.*

*Jenkins*, 345 Md. 21, 33, 690 A.2d 1000, 1006 (Md. 1997); *see Montgomery Ward v. Wilson*, 339 Md. 701, 733, 664 A.2d 916, 932 (1995) ("With respect to both intentional and non-intentional torts, . . . an award of punitive damages generally must be based upon actual malice . . . ."); *Komornik v. Sparks*, 331 Md. 720, 723-726, 629 A.2d 721, 724 (1993) (concluding that a request for punitive damages resulting from drunk driving was insufficient to show actual malice). Further, "courts [in Maryland] have imposed a strict pleading requirement in punitive damages cases." *Woodberry v. Dollar Tree Stores, Inc.*, PWG-18-551, 2018 WL 6050890 at *2 (D. Md. Nov. 19, 2018).

The term "actual malice" refers to "conduct characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill will or fraud . . . ." *Montgomery Ward*, 339 Md. at 729 n. 5, 664 A.2d at 930 n. 5; *see also Biktasheva*, 366 F. Supp. 2d at 296 ("Actual malice 'has been characterized as the performance of an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff.'") (internal citation omitted); *Darcars Motors of Silver Spring, Inc. v. Borzym*, 379 Md. 249, 264, 841 A.2d 828, 837 (2004) ("Maryland courts have defined 'actual malice' as 'conduct of the defendant characterized by evil motive, intent to injure, ill will, or fraud.'") (internal citation omitted).

"What is needed to support an award of punitive damages is conscious and deliberate wrongdoing." *Hoffman v. Stamper*, 385 Md. 1, 42, 867 A.2d 276, 301 (2005). Thus, "[n]egligence or misjudgment, 'however gross,' does not satisfy the knowledge element." *VF Corp. v. Wrexham Aviation Corp.*, 350 Md. 693, 704, 715 A.2d 188, 193 (1998); *see Al-Sabah v. Agbodjogbe*, SAG-17-730, 2020 WL 1307388, at *2 (D. Md. Mar. 19, 2020); *see also Darcars*, 378 Md. at 264, 841

A.2d at 837 (noting that "'negligence alone, no matter how gross, wanton, or outrageous, will not satisfy [the] standard [of actual malice]'") (internal citation omitted) (alteration in *Darcars*).

If a plaintiff fails to properly support a request for punitive damages, the court may strike the request. *See, e.g., Mitchell v. Lydall, Inc.*, No. 93-1374, 1994 WL 38703, at *4 (4th Cir. Feb. 10, 1994) (unpublished per curiam opinion) (affirming a grant to strike punitive damages because they were not justified by the claims); *Hanson v. Hanson*, GLR-19-2214, 2020 WL 4734313, at *3 (D. Md. Aug. 14, 2020) (striking the punitive damages claim because the plaintiffs "failed to allege any facts establishing that Defendants acted with actual malice"). Ultimately, actual malice must be established by clear and convincing evidence. *Darcars*, 379 Md. at 264, 841 A.2d at 837; *see Le Marc's Mgmt. Corp. v. Valentin*, 349 Md. 645, 652, 709 A.2d 1222, 1226 (1998).

"In Missouri, punitive damages are awarded to deter and retribute*." Bader Farms v. Monsanto Co.*, 39 F.4th 954, 962 (8th Cir. 2022) (citing *All Star Awards & Ad Specialties, Inc. v. HALO Branded Sols., Inc.*, 642 S.W.3d 281, 296 (Mo. banc 2022)). They are warranted only upon "clear and convincing evidence" that the defendant "acted with either an evil motive or a reckless indifference to the plaintiff's rights." *May v. Nationstar Mortg., LLC*, 852 F.3d 806, 814 (8th Cir. 2017) (citing *Burnett v. Griffith*, 769 S.W.2d 780, 789 (Mo. banc 1989)).

In his Opposition, plaintiff notes that the facts in support of punitive damages are largely confined to the discussion of other cases lodged against KCLI that involve the same policies that are at issue here. Plaintiff argues that I may consider them under the purview of judicial notice. ECF 35 at 33 (citing ECF 1, ¶ 6).

"[C]ourts are permitted to consider facts and documents subject to judicial notice without converting the motion to dismiss into one for summary judgment." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015). Under Rule 201 of the Federal Rules of Evidence,

facts that are not "subject to reasonable dispute" may be judicially noticed. Fed. R. Evid. 201(b). If a fact is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," then it is "not subject to reasonable dispute." *Id*.

To be sure, "courts routinely take judicial notice of documents filed in other courts ... to establish the fact of such litigation and related filings." *In re Under Armour Securities Litig.*, 409 F. Supp. 3d 446, 456 (D. Md. 2019) (internal citation omitted); *Whitt v. Wells Fargo Fin., Inc.*, 664 F.Supp.2d 537, 542 (D.S.C.2009) (taking judicial notice of court filings in another action in deciding a motion to dismiss; noting "the most frequent use of judicial notice of ascertainable facts is in noticing the content of court records"). However, if a court considers such facts at the motion to dismiss stage, the facts must be construed "in the light most favorable to the plaintiffs." *Zak*, 780 F.3d at 607 (internal citation omitted).

However, the mere reference to these other cases is not sufficient to support a claim for punitive damages. Moreover, many of the other cases involving this defendant are largely contemporaneous. And, there are no allegations that KCI flouted court rulings that concern the conduct in issue. Moreover, there is some variation in the law from state to state, such as for conversion. Perhaps most significant, the facts, as alleged, are wholly lacking in any basis to support a claim of actual malice. Therefore, I shall dismiss the claim for punitive damages.

In the alternative, plaintiff seeks to amend his complaint to include facts in support of a claim for punitive damages. ECF 35 at 34-36. This request implicates Federal Rule of Civil Procedure 15(a)(2).

Fed. R. Civ. P. 15(a)(2) provides that courts 'should freely give leave' to parties to amend pleadings 'when justice so requires.'" *Sohrabi v. Mirghahari*, GJH-20-2001, 2023 WL 1416020 at *2 (D. Md. Jan. 31, 2023) (citing Fed. R. Civ. P. 15(a)(2)). "This liberal rule gives effect to the

federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). The decision whether to grant leave to amend a complaint lies within the sound discretion of the district court. *Medigen of Ky., Inc. v. Pub. Serv. Comm'n of W.Va.*, 985 F.2d 164, 167–68 (4th Cir. 1993) (internal citation omitted).

The Fourth Circuit has "interpreted Rule 15(a) to provide that 'leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile.'" *Id.* (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)); *see also Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 379 (4th Cir. 2012). Of relevance here, an amendment is futile "when the proposed amendment is clearly insufficient or frivolous on its face." *Johnson*, 785 F.2d at 510.

An amendment is also futile if it would fail to withstand a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995). To overcome a Rule 12(b)(6) motion, a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when "the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In evaluating the sufficiency of the plaintiff's claims, the Court accepts factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *See Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005). The Court should not grant a motion to dismiss for failure to state a claim unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *GE Inv. Private*

*Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001) (citing *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249–50 (1989)).

It is significant that discovery has not yet begun. *See Brathwaite v. Helm,* GLS-22-1457, 2023 WL 185176 at *1 (D. Md. Jan. 12, 2023); *Class Produce Grp., LLC v. Harleysville Worcester Ins. Co.,* ELH 16-3431, 2017 WL 2377105 at *9 (citing *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006)).  And, plaintiff claims that KCLI was on notice, both internally from its actuaries and externally from regulators, that its COI rate charges should be based on future mortality factors rather than other factors. ECF 35 at 34-36.

I cannot yet determine whether the facts that plaintiff seeks to add in an amended complaint will be sufficient to meet the pleading standard for punitive damages.  I note, however, that the bar is a steep one.  But, I shall dismiss plaintiff's request for punitive damages, without prejudice, and with leave to amend.

### C.  Declaratory Relief

In Count V, plaintiff asks the Court, *inter alia*, to declare the parties' rights and obligations under the Policies and to declare defendant's conduct "unlawful and in material breach of the Policy and Class Policies so that future controversies may be avoided." ECF 1, ¶ 92.

Defendant asks the court to dismiss this portion of the claim on the basis that plaintiff's request for declaratory relief "is entirely duplicative of the breach of contract claims asserted in Counts I, II, and III." ECF 25 at 17. In opposition, plaintiff argues that declaratory judgment is not duplicative, as it serves a useful purpose for class certification and is prospective, whereas the breach of contract claims are retrospective. ECF 35 at 37-38.

The Declaratory Judgment Act provides, 28 U.S.C. § 2201(a):

In a case of actual controversy within its jurisdiction...any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other

legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

The Declaratory Judgment Act "is remedial only and neither extends federal courts' jurisdiction nor creates any substantive rights." *CGM, LLC v. BellSouth Telcoms., Inc.*, 664 F.3d 46, 55 (4th Cir. 2011) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950)); *see also Profiles, Inc. v. Bank of America Corp.*, 453 F. Supp. 3d 742, 752 (D. Md. 2020) ("The Declaratory Judgment Act 'provides a remedy in cases otherwise in the Court's jurisdiction; it does not create an independent cause of action.'") (quoting *Elec. Motor and Contracting Co., Inc. v. Travelers Indemnity Co. of Am.*, 235 F. Supp. 3d 781, 793 (E.D. Va. 2017)). In order to bring a declaratory judgment action under 28 U.S.C. § 2201, the plaintiff must establish the existence of a dispute that is "'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that [is] 'real and substantial[.]'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citation omitted). This is necessary in order to satisfy the case or controversy requirement of Article III of the Constitution. *Id.* at 126-27, 127 S.Ct. 764.

Notably, "'[a] request for declaratory relief is barred to the same extent that the claim for substantive relief on which it is based would be barred.'" *CGM, LLC*, 664 F.3d at 55-56 (alteration in original) (citation omitted). Further, the statute's "permissive language has long been interpreted to provide discretionary authority to district courts to hear declaratory judgment cases." *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493 (4th Cir. 1998). Thus, the Declaratory Judgment Act "'merely permits' federal courts to hear those cases rather than granting litigants a right to judgment.'" *Medical Mutual Ins. Co. of N.C. v. Littaua*, 35 F.4th 205, 208 (4th Cir. 2022) (quoting *Trustgard Ins. Co. v. Collins*, 942 F.3d 195, 201-02 (4th Cir. 2019)).

Defendant is correct in asserting that a request for declaratory judgment that mirrors other counts in the Complaint is unnecessary and duplicative. *See, e.g., Championship Tournaments, LLC v. United States Youth Soccer Ass'n, Inc.*, SAG-18-2580, 2019 WL 6895876, at *2 (D. Md. Dec. 18, 2019) (declaratory judgment was unnecessary where the claim for declaratory relief was "entirely duplicative" of the plaintiff's breach of contract claims); *John M. Floyd & Assocs., Inc. v. Howard Bank*, RDB-18-2887, 2019 WL 1755968, at *4 (D. Md. Apr. 18, 2019) (dismissing, as duplicative, a declaratory judgment count that encompassed the plaintiff's entire breach of contract claim).  Here, the claim essentially duplicates the contract claims.

The same contentions were considered in *Fine*.  Notably, the court in that case concluded that the "declaratory judgment claim serves no useful purpose."  *Fine*, 2022 WL 4240901, at *8.

I completely agree with the *Fine* Court.  Therefore, I shall dismiss the portion of Count V pertaining to declaratory judgment.  Instead, plaintiff may seek declaratory relief as a remedy. *See Willowbrook Apartment Associates, LLC v. Mayor of Baltimore,* 563 F. Supp. 3d 428, 454 (D. Md. 2021) ("If, at the remedy stage of these proceedings, a declaratory judgment becomes necessary to effectuate any relief to which the Plaintiffs are entitled, the Court will consider, at that time, whether a declaratory judgment is necessary and appropriate.").

### D. Injunctive Relief

In Count V, plaintiff also seeks injunctive relief.  He asks the Court to enjoin defendant "(1) from continuing to engage in conduct in breach of the Policy and Class Policies, and from continuing to collect unlawfully inflated charges in violation of the Policy and Class Policies; and (2) ordering Defendant to comply with the terms of the Policy and Class Policies in regards to its assessment of charges against Plaintiff and class members' accumulated values." ECF 1, ¶ 91.

Defendant urges dismissal of this claim as duplicative of the claims for breach of contract, and because it does not constitute an independent cause of action. ECF 25 at 17-18. In response, plaintiff reiterates that the injunctive relief claim is not duplicative, serves a useful purpose for class certification, and would provide prospective relief. ECF 35 at 37-38.

"[A] request for injunctive relief does not constitute an independent cause of action; rather, the injunction is merely the remedy sought for the legal wrongs alleged in ... the substantive counts." *Simone v. VSL Pharm., Inc.*, TDC-15-1356, 2017 WL 66323, at *10 (D. Md. Jan. 5, 2017); *see also Orteck Int'l Inc. v. Transpacific Tire Wheel, Inc.*, 704 F. Supp. 2d 499, 521 (D. Md. 2010), *aff'd sub nom. Orteck Int'l v. TransPacific Tire & Wheel, Inc.*, 457 Fed.Appx. 256 (4th Cir. 2011) ("An injunction and an accounting are remedies, not independent causes of action."). Nevertheless, the fact that a plaintiff pleads injunctive relief as an independent claim does not automatically mandate dismissal. *See, e.g., Power Home Solar, LLC v. Sigora Solar, LLC*, TTC-20-00042, 2021 WL 3857459 at *14 (W.D. Va. Aug. 30, 2021) ("'[Plaintiff] has also asserted, as a separate count, a request for injunctive relief. However, a request for injunctive relief does not constitute an independent cause of action; rather, the injunction is merely the remedy sought for the legal wrongs alleged in the nine substantive counts.'") (quoting *Fare Deals, Ltd. v. World Choice Travel.com, Inc.*, 180 F. Supp. 2d 678, 682 n. 1 (D. Md. 2001); M.J. *Woods, Inc. v. Little Rapids Corp.*, MOC-16-00356, 2016 WL 7494469, at *4 (W.D.N.C. Dec. 30, 2016) (dismissing a count for injunction, but incorporating it "by reference elsewhere without further amendment"); *Dwoskin v. Bank of America, N.A.,* 850 F. Supp. 2d 557, 573 (D. Md. 2012) (court did not dismiss separate count for injunctive relief as the plaintiffs "adequately pled five causes of action in this case, leaving them causes of action on which they can seek the requested injunction.").

To be sure, courts have found dismissal of independent claims for injunctive relief appropriate in some instances. For example, in *Simone, 2017 WL 66323*, Judge Chuang dismissed counts of a complaint seeking a preliminary and permanent injunction. He reasoned that "[w]here ... injunctive relief is included in the request for relief, there is no reason to allow these duplicative requests to proceed in the improper guise of independent causes of action." *Id*. at *10.

In *Fine*, 2022 WL 4240901, the court agreed with KCI that the request for injunctive relief is merely a remedy.  *Id.* at * 8.  It dismissed that portion of the suit.  *Id.*

Here, plaintiff has asserted an independent claim for injunctive relief in Count V of the Complaint. I shall dismiss the claim. But, this ruling is without prejudice to plaintiff's right to pursue injunctive relief as a remedy.

## V.      Conclusion

For the reasons stated above, I shall dismiss the claim for punitive damages, without prejudice and with leave to amend.  I shall also dismiss the claims for declaratory and injunctive relief in Count V.  In all other respects, I shall deny the Motion to Dismiss.

An Order follows, consistent with this Memorandum Opinion.


Date: March 14, 2023                                                     _____/s/_____
                                                                                        Ellen L. Hollander
                                                                                        United States District Judge

40