IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LARRY A. MCMILLAN,

    *Plaintiff*,

    v.

KANSAS CITY LIFE INSURANCE
COMPANY,

    *Defendant*.

Civil No. 1:22-cv-01100-ELH

## MEMORANDUM

Larry A. McMillan, plaintiff, filed a class action complaint against defendant Kansas City
Life Insurance Company ("KCLI" or "KCL"), alleging breach of contract and conversion with
respect to universal and variable universal life insurance policies issued by KCLI.  *See* ECF 1
("Complaint").  Plaintiff included his insurance policy as an exhibit to the suit.  ECF 1-1 (the
"Policy").  According to plaintiff, defendant breached his Policy and the policies of others ("Class
Policies") (collectively, the "Policies") by assessing charges in excess of amounts authorized by
the insurance policies.  *Id.*[1]

The Complaint contained five counts.  Count I alleged breach of contract.  According to
plaintiff, KCLI breached the insurance contracts by improperly calculating monthly cost of
insurance rates using factors not authorized by the Policies, and then deducting those charges from
accumulated values. *Id.* ¶¶ 62–70. Count II alleged breach of contract by "deducting unauthorized
expense charges from the accumulated values . . . ." *Id.* ¶ 73. Count III alleged breach of contract
by failing to reduce the cost of insurance rates despite improved mortality expectations. *Id.* ¶¶ 75–

---

[1] Jurisdiction is premised on diversity of citizenship, pursuant to 28 U.S.C. § 1332.  ECF
1, ¶ 10.

79. Count IV alleged conversion.  ECF 1, ¶¶ 80-88.  According to plaintiff, KCLI converted the property interests of plaintiff and the class in their accumulated values by deducting charges exceeding the amounts authorized by the Policies. *Id.* ¶¶ 81–89. Count V asserted a claim for declaratory and injunctive relief.  In particular, plaintiff sought a declaration that defendant is in material breach of the Policy and the Class Policies, and an injunction to enjoin KCLI from further breach. *Id.* ¶¶ 89-93. Plaintiff also sought compensatory and punitive damages, attorney's fees, and costs.  *Id.* at 20.

KCLI moved to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6). ECF 17. KCLI also sought dismissal of McMillan's punitive damages claim. *Id.* By Memorandum Opinion (ECF 48) and Order (ECF 49) of March 14, 2023, I denied the motion to dismiss as to Counts I-IV, but I granted it as to Count V and as to plaintiff's request for punitive damages. However, I granted plaintiff leave to file an amended complaint. *Id.*

Plaintiff filed a "First Amended Class Action Complaint" on April 4, 2023.  ECF 52 ("Amended Complaint" or "FAC"). The allegations in the FAC concerning Counts I-V are largely the same as the allegations in the Complaint.[2]  But, plaintiff added eleven paragraphs to support his claims for punitive damages. *Id.* ¶¶ 51-61.

Pursuant to Fed. R. Civ. P. 12(b)(6), defendant has moved to dismiss plaintiff's claim for punitive damages.  ECF 54.  The motion is supported by a memorandum. ECF 55 (collectively, the "Motion").  Defendant has otherwise answered the Amended Complaint (ECF 58), supported by a single exhibit (ECF 58-1).[3]

---

[2] Plaintiff has included Count V "for appellate preservation purposes."  ECF 52 at 22 n.3.

[3] KCLI states that the Court may consider the exhibit to its answer (ECF 58-1) for the purpose of resolving a motion to dismiss. ECF 58 at 16 n. 5 The exhibit appears to be a communication from the Maryland Insurance Administrator to McMillan regarding certain

2

Plaintiff opposes the Motion (ECF 63, the "Opposition").  Defendant has replied.  ECF 64 (the "Reply").

No hearing is necessary to resolve the Motion.  *See* Local Rule 105.6.  For the reasons that follow, I shall grant the motion to dismiss in part and deny it in part.

## I.      Background[4]

As noted, the Amended Complaint includes eleven new paragraphs that plaintiff argues support his claim for punitive damages. ECF 52, ¶¶ 51-61. Accordingly, to the extent relevant, the facts recounted in the prior Memorandum Opinion (ECF 48 at 3-6) are incorporated here. And, I shall set forth plaintiff's new allegations in the FAC, as they relate to his claim for punitive damages.

> 51. Defendant drafted the Class Policies and was aware the Class Policies contained a promise that the cost of insurance rates will be "based on [Defendant's] expectations as to future mortality experience" and certain other mortality-related factors, such as age, sex, risk class, and policy duration. Defendant was aware that it was required to comply with its contractual provisions, which is confirmed by various documents, including documents relating to its "Determination Procedures."

> 52. Defendant understood that its cost of insurance rates must be based on its expectations as to future mortality experience rather than other pricing assumptions and factors, such as investment margins, as is evidenced in documentation from Defendant's actuaries, including, specifically, correspondence from Defendant's actuary, Matthew Dolliver—relying on conversations with Dave Metzler—explicitly confirming that understanding in email. Defendant is aware

concerns related to his cost of insurance. ECF 58-1. But, KCLI does not reference ECF 58-1 in the Motion. Nor does defendant otherwise provide any argument as to how ECF 58-1 is relevant to the issue of punitive damages.

[4] At this juncture, the Court assumes the truth of the allegations stated in the Complaint. *See Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019).

In my citations to the parties' submissions, I cite to the electronic pagination.  However, the electronic pagination does not always correspond to the page number imprinted on a given submission.

that it does not determine its cost of insurance rates based on its expectations as to future mortality experience, regardless as to whether "expectations as to future mortality experience" refers to projected death claims (as Defendant contends) or to assumed mortality rates (as Plaintiff contends). Defendant is further aware that its cost of insurance rates exceed its expectations as to future mortality experience. And Defendant is aware that it deducted the cost of insurance every month using the cost of insurance rates that it inflated with non-mortality assumptions and factors. The cost of insurance rates and mortality expectations have been identified by Defendant.

53. Defendant is further aware that higher policy charges lead to lower accumulated values for policyholders, which in turn, increases the likelihood that a policyholder's policy will lapse absent increased premium payments.

54. In addition to the Class Policies themselves, Defendant referred to the cost of insurance charges as "mortality charges" in marketing materials and illustrations despite its knowledge that it was passing on undisclosed non-mortality expenses and assumptions through the cost of insurance charges.

55. Defendant explicitly marketed the Class Policies as permanent products that "simply cannot become obsolete in your lifetime" with "low cost protection based on current mortality expectations." Defendant made similar representations to regulators; for instance, in 1986 Defendant told a regulator: "A repricing of this product would occur whenever our expectations as to future mortality experience would suggest that our current premiums are either inadequate or too high." Yet Defendant has not revised its rates for any product since 1987— more than 35 years ago.

56. In 1997, one state regulator explicitly requested that Defendant "[d]elete all factors such as persistency, interest, expenses, etc. from the Cost of Insurance provision, other than mortality cost. The Department will not allow these factors in the determination of the cost of insurance." Nevertheless, Defendant responded to that regulator by misleadingly suggesting that it was complying with that requirement.

57. Moreover, since at the latest 2008, Defendant has changed the wording in all policies it sells to eliminate the promise that cost of insurance rates "will be determined by us based on our expectations as to future mortality experience," which establishes that Defendant was aware that this phrase limited its authority to set cost of insurance rates under the policies, as reflected in the policy language for the SuperNova, FlexWeath, and Life Protector products. In fact, this revision occurred for certain products by 2000, as seen with the Nova and Nova II products.

58. Since 2012 at the latest, Defendant's Senior Vice President and Chief Actuary, Mark Milton, has repeatedly inquired about which policies had the more permissive cost of insurance rates language. And Dave Metzler, Marc Bensing,

4

Lendy Kessler, Jill Daniel, and Lynn Robinson have been involved in similar conversations.

59. Likewise, in early 2017 at the latest, Mark Milton attended the ReFocus Conference at which cost of insurance litigation was a major topic of discussion. In early 2017, Defendant undertook a project comparing its pricing assumptions (a set of expected mortality rates) for the relevant products to the recent mortality experience.

60. Defendant also understood that the Class Policies were too complex for policyholders to fully understand how policy values are calculated. For instance, in one letter to regulators Defendant stated: "It goes without saying that the complexity of this product simply will not allow the reproduction of cash values by a policyowner without every item of detail regarding interest, expense charges, current cost of insurance rates, etc. This is a 'computer-age' product which is not 'cut and dried,' and demands an element of trust from our policyholder. . . . [I]t is our opinion that the mathematics of this product are actually too sophisticated for most buyers to comprehend . . . ."

61. In June 2018, a Missouri jury returned a verdict under Missouri law in favor of a class of policyholders alleging nearly identical claims relating to inflated cost of insurance charges against State Farm Life Insurance Company, finding that the insurer had breached its policies and converted policyholder property by deducting unauthorized charges. In June 2020, the Eighth Circuit Court of Appeals affirmed the jury's verdict. Counsel for Defendant attended the oral argument before the panel of the Eighth Circuit in November 2019, suggesting that Defendant was aware of the jury verdict prior to such time. Despite its awareness of these rulings applied to nearly identical conduct, Defendant has not changed its practice of deducting unauthorized amounts from policyholders' accumulated values.[]

KCL denies the entirety of paragraphs 52-60. *See* ECF 58, ¶¶ 52-60. As to paragraph 51, KCL "admits that Section 4 of Policy No. 2558330 contains language similar to that which Plaintiff has altered in purporting to excerpt the language, 'based on [Defendant's] expectations as to future mortality experience' but denies the remaining allegations to the extent they purport to characterize or summarize the policy rather than accurately stating its actual terms." *Id.* ¶ 51 (alterations in ¶ 51). And, KCL "admits that in June 2018, in *Vogt v. State Farm Life Insurance Company*, in the United States District Court for the Western District of Missouri, Case No. 2:16-cv-04170-NKL, a jury returned a verdict in favor of a plaintiff class against State Farm Life Insurance Company, and in June 2020, the United States Court of Appeals [for the] Eighth Circuit

5

affirmed the jury's verdict against that third party based on the record in that case and the court's assessment of the issues, arguments and authorities presented in that appeal." ECF 58, ¶ 61.  But, it denies the remaining allegations in paragraph 61.  *Id.*

## II.     Legal Standard

### A.  Rule 12(b)(6)

Pursuant to Fed. R. Civ. P. 12(b)(6), KCLI has filed a partial motion to dismiss, limited to plaintiff's claim for punitive damages,. ECF 54. A defendant may test the legal sufficiency of a plaintiff's complaint by way of a motion to dismiss under Rule 12(b)(6*). Nadendla v. WakeMed*, 24 F.4th 299, 304-05 (4th Cir. 2022); *Fessler v. Int'l Bus. Machs. Corp.*, 959 F.3d 146, 152 (4th Cir. 2020); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom., McBurney v. Young*, 569 U.S. 221 (2013).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  *See Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002).  That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The purpose of the rule is to provide the defendant with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570*; see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); *see also Nadendla*, 24 F.4th at 304-05; *Fauconier v. Clarke*, 996 F.3d 265, 276 (4th Cir. 2020); *Paradise Wire & Cable*, 918 F.3d at 317-18; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).  To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2).  *Twombly*, 550 U.S. at 555.  Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam).  But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).  If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient.  *Twombly*, 550 U.S. at 555.  "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief.  *Iqbal*, 556 U.S. at 678.  Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts]

in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012). But, "[m]ere recitals of a cause of action, supported only by conclusory statements, are insufficient to survive" a Rule 12(b)(6) motion. *Morrow v. Navy Federal Credit Union*, 2022 WL 2526676, at *2 (4th Cir. July 7, 2022).

In connection with a Rule 12(b)(6) motion, courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (citation omitted); *see Bing v. Brio Sys.*, LLC, 959 F.3d 605, 616 (4th Cir. 2020). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of*

*the complaint.*'"  *Goodman*, 494 F.3d at 464 (emphasis in *Goodman*) (quoting *Forst*, 4 F.3d at 250).

A plaintiff may not cure a defect in a complaint or otherwise amend a complaint by way of an opposition to a motion.  *See, e.g.*, *So. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing or oral advocacy."); *Glenn v. Wells Fargo Bank, N.A.*, DKC-3058, 2016 WL 3570274 at *3 (D. Md. July 1, 2016) (declining to consider declaration attached to brief opposing motion to dismiss because, among other things, it included allegations not alleged in the suit); *Zachair Ltd. v. Driggs*, 965 F. Supp. 741, 748 n. 4 (D. Md. 1997) (stating that a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"), *aff'd*, 141 F.3d 1162 (4th Cir. 1998); *Mylan Labs., Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991) ("'[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss'") (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984)), *aff'd*, 2 F.3d 56 (4th Cir. 1993).

When a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are generally "limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'"  *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448); *see Goines*, 822 F.3d at 166 (a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits."); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ.*

*Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).   In contrast, the court ordinarily "may not consider any documents that are outside of the complaint, or not expressly incorporated therein[.]" *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed. v. Town of Gilbert*, 576 U.S. 155 (2015); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

### III.   Discussion

KCLI argues that plaintiff has not pleaded sufficient facts that, if true, entitle plaintiff to recover punitive damages. ECF 55 at 9.  Therefore, it asks the Court to dismiss plaintiff's claim for punitive damages. *Id.* at 15.

As a threshold matter, KCLI asks this Court to dismiss plaintiff's claim for punitive as to the conversion claim, as well as for breach of contract. ECF 55 at 15 n. 5. Maryland law applies to plaintiff's breach of contract claim. *See* ECF 48 at 14.

The Maryland Court of Appeals[5] has "made clear well before 1976 and has consistently maintained since then, that punitive damages are not recoverable by anyone in a breach of contract action." *Baltimore County v. RTKL Associates Inc.*, 380 Md. 670, 666-67, 846 A.2d 433, 547 (2004) (citing S*t. Paul at Chase v. Mfrs. Life Insur.*, 262 Md. 192, 236, 278 A.2d 12, 33, *cert.*

---

[5]   In the general election held in November 2022, the voters of Maryland approved a constitutional amendment to change the name of the Maryland Court of Appeals to the Supreme Court of Maryland. And, the voters also approved changing the name of the Maryland Court of Special Appeals to the Appellate Court of Maryland. These changes went into effect on December 14, 2022. *See* Press Release, Maryland Courts, Voter-approved constitutional change renames high courts to Supreme and Appellate Court of Maryland (Dec. 14, 2022), https://www.courts.state.md.us/media/news/2022/pr20221214#:~:text=Effective%20immediately %2C%20the% 20Court% 20of,the%20Appellate% 20Court% 20of% 20Maryland.  However, I shall refer to the Courts by the names that were in effect when the cited decisions were issued.

*denied*, 404 U.S. 857 (1971)); *see also Siegman v. Equitable Trust Co.*, 267 Md. 309, 313, 297 A.2d 758, 760 (1972) ( "It is well settled in this State that there can be no award of punitive damages in a pure action for breach of contract."); *Bowden v. Caldor*, 350 Md. 4, 22, 710 A.2d 267, 276 (1998) ("Under Maryland law, punitive damages are allowable only in tort actions."). Accordingly, I shall dismiss plaintiff's request for punitive damages in connection with his claim of breach of contract.

Choice of law analyses can be difficult to conduct at the motion to dismiss stage and may be better suited for discussion in the context of a motion for summary judgment. *See*, *e.g., Malinowski v. Lichter Grp., LLC*, WDQ-14-917, 2015 WL 1129522, at *4 (D. Md. Mar. 11, 2015); *Cleaning Auth., Inc. v. Neubert,* 739 F. Supp. 2d 807, 817-19 (D. Md. 2010); *see also* ECF 48 at 27.  Nevertheless, plaintiff's conversion claim appears to be governed by Missouri law.  ECF 48 at 30-31; *see Ben-Joseph v. Mt. Airy Auto Transporters, LLC,* 529 F. Supp. 2d 604, 608 (D. Md. 2008) ("Maryland courts have held punitive damages to be of a substantive nature.") (citing *Naughton v. Bankier*, 114 Md. App. 641, 691 A.2d 712, 716 (1997)).

Previously, I noted that "plaintiff concedes there is no 'material [difference]' under Maryland and Missouri law as to the standard for punitive damages in the context of a conversion claim." ECF 48 at 31 (citing ECF 35 at 33 n. 13.). The Court credited plaintiff's assertion, and largely focused its punitive damages analysis on the law of Maryland. *See* ECF 48 at 31-33; *see also* ECF 55 at 9 n. 4. Indeed, KCLI appears to agree with plaintiff's prior assertion, as it continues to argue for dismissal under Maryland law. ECF 55 at 9-15.

However, plaintiff now states that he "does not necessarily agree that there is no material difference whatsoever between Missouri and Maryland law related to punitive damages." ECF 63 at 6-7 n. 1. But, plaintiff does not explain how application of one state's law rather than the other

11

could result in a different outcome. And, both parties analyze the claim for punitive damages under Maryland law. Nevertheless, given plaintiff's current position, I will review the standards for punitive damages under both Missouri and Maryland law.

In Maryland, punitive damages are designed "to punish the wrongdoer for particularly egregious or heinous conduct and to deter others from following suit." *Anne Arundel County v. Reeves*, 474 Md. 46, 66, 252 A.3d 921, 932 (2021); *see also Owens-Illinois, Inc. v. Zenobia*, 325 Md. 420, 452-455, 601 A.2d 633, 649–50 (1992).  Under Maryland law, regardless of the theory of recovery, "punitive damages cannot be recovered absent malice."  *Saval v. BL Ltd.*, 710 F.2d 1027, 1033 (4th Cir. 1983).

Indeed, Maryland courts have held that "with respect to both intentional and non-intentional torts, . . . .  an award of punitive damages must be based upon actual malice, in the sense of conscious and deliberate wrongdoing, evil or wrongful motive, intent to injure, ill will or fraud." *Scott v. Jenkins*, 345 Md. 21, 33, 690 A.2d 1000, 1006 (Md. 1997); *see Montgomery Ward v. Wilson*, 339 Md. 701, 733, 664 A.2d 916, 932 (1995) ("With respect to both intentional and non-intentional torts, . . . an award of punitive damages generally must be based upon actual malice . . . ."); *Komornik v. Sparks*, 331 Md. 720, 723-726, 629 A.2d 721, 724 (1993) (concluding that a request for punitive damages resulting from drunk driving was insufficient to show actual malice). Further, "courts [in Maryland] have imposed a strict pleading requirement in punitive damages cases." *Woodberry v. Dollar Tree Stores, Inc*., PWG-18-551, 2018 WL 6050890 at \*2 (D. Md. Nov. 19, 2018).

The term "actual malice" refers to "conduct characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill will or fraud . . . ."  *Montgomery Ward*, 339 Md. at 729 n. 5, 664 A.2d at 930 n. 5; *see also Biktasheva*, 366 F. Supp. 2d at 296 ("Actual

malice 'has been characterized as the performance of an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff.'") (internal citation omitted); *Darcars Motors of Silver Spring, Inc. v. Borzym*, 379 Md. 249, 264, 841 A.2d 828, 837 (2004) ("Maryland courts have defined 'actual malice' as 'conduct of the defendant characterized by evil motive, intent to injure, ill will, or fraud.'") (internal citation omitted).

   "What is needed to support an award of punitive damages is conscious and deliberate wrongdoing." *Hoffman v. Stamper*, 385 Md. 1, 42, 867 A.2d 276, 301 (2005). Thus, "[n]egligence or misjudgment, 'however gross,' does not satisfy the knowledge element." *VF Corp. v. Wrexham Aviation Corp.*, 350 Md. 693, 704, 715 A.2d 188, 193 (1998); *see Al-Sabah v. Agbodjogbe*, SAG-17-730, 2020 WL 1307388, at *2 (D. Md. Mar. 19, 2020); *see also Darcars*, 378 Md. at 264, 841 A.2d at 837 (noting that "'negligence alone, no matter how gross, wanton, or outrageous, will not satisfy [the] standard [of actual malice]'") (internal citation omitted) (alteration in *Darcars*).

   If a plaintiff fails to properly support a request for punitive damages, the court may strike the request. *See, e.g., Mitchell v. Lydall, Inc.*, No. 93-1374, 1994 WL 38703, at *4 (4th Cir. Feb. 10, 1994) (unpublished per curiam opinion) (affirming a grant to strike punitive damages because they were not justified by the claims); *Hanson v. Hanson*, GLR-19-2214, 2020 WL 4734313, at *3 (D. Md. Aug. 14, 2020) (striking the punitive damages claim because the plaintiffs "failed to allege any facts establishing that Defendants acted with actual malice"). Ultimately, actual malice must be established by clear and convincing evidence. *Darcars*, 379 Md. at 264, 841 A.2d at 837; *see Le Marc's Mgmt. Corp. v. Valentin*, 349 Md. 645, 652, 709 A.2d 1222, 1226 (1998).

   KCLI initially argues that plaintiff's claim for punitive damages cannot succeed, as plaintiff's new allegations do not establish that it "had any ill will or evil intent." ECF 55 at 14.

Indeed, the Court is inclined to agree that plaintiff's allegations are nowhere near sufficient to plead actual malice, if a rancorous motive is required. But, plaintiff argues that he "need only allege that KCLI was 'conscious' of its 'wrongdoing.'" ECF 63 at 15 (quoting *Darcars*, 150 Md. App. at 44, 818 A.2d at 1173). And, "[p]laintiff repeatedly alleges that KCL was aware that it was allegedly charging its policy holders expenses other than mortality-related charges." ECF 55 at 12. KCLI counters that plaintiff misreads *Darcars*, and that the "wrongdoing" to which plaintiff refers "must be 'characterized by evil motive, intent to injure, ill will, or fraud' to establish actual malice." ECF 64 at 5 (quoting *Darcars*, 379 Md. at 265–66, 841 A.2d at 838).

In *Darcars*, the Maryland Court of Appeals said, 379 Md. at 265–66, 841 A.2d at 838:

> The term "actual malice" in the context of conversion requires little explanation beyond the definition we have established in our previous cases: consciousness of the wrongdoing or "conduct of the defendant characterized by evil motive, intent to injure, ill will, or fraud." *Zenobia*, 325 Md. at 460, 601 A.2d at 652; *see Bowden*, 350 Md. at 23, 710 A.2d at 276; *Scott*, 345 Md. at 33, 690 A.2d at 1006; *Montgomery Ward*, 339 Md. at 735–36, 664 A.2d at 933; *Ellerin*, 337 Md. at 228–29, 652 A.2d at 1123. Where the defendant converts property with a consciousness of the wrongfulness of that conversion, he or she possesses the requisite improper motive to justify the imposition of punitive damages.

Thus, if plaintiff's reading is correct, and "consciousness of the wrongdoing" in and of itself is sufficient to maintain a claim for punitive damages arising from conversion, then the motion must be denied. On the other hand, if KCLI's interpretation that "wrongdoing" must be "characterized by evil motive, intent to injure, ill will, or fraud," then the motion must be granted.

"It is clear that in Maryland, the same standard is applied 'in any tort case' to prove punitive damages." *Jordan v. Iverson Mall Ltd. Partnership*, GJH–14–37, 2018 WL 2391999, at *4 (D. Md. May 25, 2018) (internal quotation and citations omitted). And, in a punitive damages case arising out of a civil battery more than a decade after *Darcars*, the Maryland Court of Appeals stated that "actual malice . . . requires proof of a specific intent." *Beall v. Holloway-Johnson*, 446 Md. 48, 73, 130 A.3d 406, 420 (2016).

Indeed, the Court is not in short supply of cases from federal courts interpreting Maryland's punitive damages law, as well as Maryland courts, that continue to find that wrongdoing or conduct only constitutes actual malice when it is characterized by evil motive, intent to injure, ill will, or fraud. *See e.g.*, *Arkansas Nursing Home Acquisition, LLC v. CFG Community Bank*, 460 F.Supp.3d 621, 650 (D. Md. 2020); *Partners in Travel, Inc. v. Marshall*, CCB-19-435, 2020 WL 206701, at *5 (D. Md. Jan. 14, 2020); *Baugher v. Glen*, 2019 WL 2145864, at *4 (Md. Ct. Spec. App. May 16, 2019); *Yah Kai World Wide Enterprises, Inc. v. Napper*, 292 F.Supp.3d 337, 369-370 (D.D.C. 2018); *1st Team Fitness, LLC v. Illiano*, 228 Md.App. 137, 148, 137 A.3d 317, 323 (2016); *Sinclair Broadcast Group, Inc. v. Colour Basis, LLC*, CCB-14-2614, 2016 WL 3541204, at *10 (D. Md. June 29, 2016); *Tierco Maryland, Inc. v. Williams*, 381 Md. 378, 849 A.2d 504, 526 n. 29 (2004). Tellingly, plaintiff does not provide a cite to a single case, aside from *Darcars*, for the proposition that a mere consciousness of wrongdoing can amount to actual malice in connection with a claim for punitive damages. *See* ECF 63.

To be sure, Fed. R. Civ. P. 9(b) provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." As a result, "there is no heightened pleading standard for malice." *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377 (4th Cir. 2012). Nevertheless, "malice must still be alleged in accordance with Rule 8—a 'plausible' claim for relief must be articulated." *Id*. "Rule 9(b), thus, does not override the requirement that to survive a Rule 12(b)(6) motion to dismiss, a complaint must state a plausible claim for relief." *Palmer v. Kirkland*, GLR-16-2636, 2017 WL 11615522, at *4 (D. Md. June 23, 2017) (citation omitted). Accordingly, plaintiff must allege facts that, if proven, establish a claim for punitive damages. Plaintiff has failed to allege that KCL acted with actual malice, as defined under Maryland law.

As noted, punitive damages law in Missouri and Maryland is quite similar. Like Maryland, "[i]n Missouri, punitive damages are awarded to deter and retribute." *Bader Farms v. Monsanto Co.*, 39 F.4th 954, 962 (8th Cir. 2022) (citing *All Star Awards & Ad Specialties, Inc. v. HALO Branded Sols., Inc.*, 642 S.W.3d 281, 296 (Mo. banc 2022)). And, just as in Maryland, punitive damages in Missouri are warranted upon "clear and convincing evidence" that the defendant acted with a rancorous motive. *May v. Nationstar Mortg., LLC*, 852 F.3d 806, 814 (8th Cir. 2017) (citing *Burnett v. Griffith*, 769 S.W.2d 780, 789 (Mo. banc 1989)). Further, "[p]unitive damages are available for the torts of trespass and conversion under Missouri law. . . ." *JCB, Inc. v. Union Planters Bank, NA*, 539 F.3d 862, 872 (8th Cir. 2008) (citing *Wright v. Edison*, 619 S.W.2d 797, 803 (Mo.Ct.App.1981)).

However, there lies a key distinction between punitive damages law in Maryland and Missouri. In Maryland, the "mental state of reckless indifference . . . does ***not*** suffice to justify an award of punitive damages." *Hoffman*, 385 Md. at 42, 867 A.2d at 300 (emphasis in original) (citation omitted). But, in Missouri, "a plaintiff is entitled to punitive damages if she proves by clear and convincing evidence that the defendant's conduct was outrageous because of the defendant's reckless indifference to the rights of others." *Chole v. Boston Scientific Corp.*, JAR-19-2976, 2020 WL 1853266, at *8 (E.D. Mo. Apr. 13, 2020) (citing *Gilliland v. Missouri Athletic Club*, 273 S.W.3d 516, 520 (Mo. 2009)); *see also Scott v. Dyno Nobel, Inc.*, ___F.Supp.3d___, 2022 WL 3910709, at *6 (E.D. Mo. Aug. 31, 2022) ("Plaintiff must prove, either by direct or circumstantial evidence, that Defendant acted with either an evil motive or a reckless indifference to the plaintiff's rights.") (quotation and citations omitted).

The Supreme Court of Missouri does not appear to have indicated what behavior or conduct constitutes reckless indifference in the context of tortious conversion. But, the court has noted that

lower courts should consider whether the defendant was aware of the wrongdoing, and whether the wrongdoing was an isolated incident, when determining the appropriateness of punitive damages based on reckless indifference that arose due to a claim of negligence. *See Lopez v. Three Rivers Elec. Co-op., Inc.*, 26 S.W.3d 151, 160 (Mo. banc 2000); *see also Oyler v. Hy-Vee, Inc.,* 539 S.W.3d 742, 750 n. 5 (Mo.App.W.D. 2017)*; Arrowhead Forest Products, LLC v. Shamrock Building Materials, Inc.,* DW-12-6047, 2013 WL 12286171, at *2 (W.D. Mo. Jan. 10, 2013); *Dayton Const., Inc. v. Meinhardt*, 882 S.W.2d 206, 209-210 (Mo.App. 1994).

McMillan has alleged facts to show that KCL was aware that it was assessing costs and charges in excess of what was authorized by the Policies. *See* ECF 52.  For example, plaintiff alleges that KCL's own actuary informed defendant, at least by 2012, that it was improperly calculating the cost of insurance under the Policies. *Id.* ¶¶ 52, 58. Moreover, plaintiff has alleged that, as early as 1997, a state regulator informed KCLI that the cost of insurance should only include a mortality cost. *Id.* ¶ 56.  And, plaintiff alleges that defendant was aware of a case in Missouri in which similar cost of insurance calculations and subsequent deductions were found to constitute conversion. *Id.* ¶ 61. Perhaps most important, plaintiff alleges that, despite KCL's knowledge that it can only utilize mortality factors in its cost of insurance calculation, it continued to use other factors, and therefore it "continues to retain [] funds unlawfully without Plaintiff and class members' consent." *Id.* ¶ 94.

Therefore, plaintiff has "alleged facts supporting a plausible inference" that KCLI acted with reckless indifference in regard to the insurance calculations. *Holloway v. Maryland*, 32 F.4th

293, 300 (4th Cir. 2022).   Accordingly, to the extent that the claim for punitive damages is governed by Missouri law, I shall deny the Motion.[6]

### IV. Conclusion

In light of the foregoing, I shall deny the Motion as to plaintiff's request for punitive damages in connection with his conversion claim, to the extent that Missouri law applies. But, I shall grant the Motion insofar as plaintiff seeks punitive damages in connection with a claim for breach of contract. And, I shall grant the Motion as to Count V of the FAC.


Date: June 7, 2023                                      _____/s/_____
                                                        Ellen L. Hollander
                                                        United States District Judge

---

[6] This Memorandum Opinion does not constitute a final determination as to the choice of law issue.