IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| LARRY A. MCMILLAN, *individually and on behalf of others similarly situated,* | * | |
| | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No. 22-1100-BAH |
| KANSAS CITY LIFE INSURANCE COMPANY, | * | |
| | * | |
| Defendant. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff Larry A. McMillan ("McMillan" or "Plaintiff") filed this civil suit individually and on behalf of other similarly situated individuals against Defendant Kansas City Life Insurance Company ("KCL" or "Defendant"), alleging breach of contract and related claims. ECF 1 (complaint), at 15–19 ¶¶ 61–93; ECF 52 (amended complaint), at 18–23 ¶¶ 72–104.[1] McMillan brings this case pursuant to Federal Rule of Civil Procedure 23 on behalf of a class of persons "who own or owned certain universal and variable universal life insurance policies issued by Defendant in the State of Maryland." ECF 52, at 3 ¶ 5. McMillan filed a motion for class certification, ECF 77, along with sealed materials in support, including the memorandum of law and exhibits, ECF 78. Defendant filed a response in opposition, ECF 88, as well as exhibits, ECFs 90 and 91. Plaintiff replied. ECF 96. Defendant then filed a motion to dismiss for lack of subject matter jurisdiction based on the contention that McMillan is not a member of the putative

---

[1] All filings are referenced by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page, including where a party's supplied page number and the ECF-generated page number differ.

class he seeks to represent as alleged in the amended complaint. ECF 93. McMillan opposed this motion, ECF 97, and Defendant replied, ECF 98. Defendant has further filed a motion for leave to supplement its opposition to Plaintiff's motion for class certification, ECF 106, which Plaintiff opposed, ECF 107. Defendant filed a reply. ECF 110. All filings include memoranda of law, and the motions include exhibits. While Defendant requests a hearing, the Court finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). The Court will first address Defendant's 12(b)(1) motion to dismiss, then McMillan's motion for class certification and Defendant's motion for leave. For the reasons stated below, Defendant's motion to dismiss is **DENIED**, Defendant's motion for leave to supplement is **GRANTED**, and McMillan's motion for class certification is **GRANTED**.

## I.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.   Factual Allegations in the Amended Complaint

McMillan alleges breach of contract and conversion by Defendant, related to the terms of the life insurance policy that McMillan and other members of the putative class purchased from Defendant. ECF 52, at 2 ¶ 1. The insurance policy includes both a death benefit and an "accumulated value," which is "an investment, savings, or interest-bearing component that accumulates value over time." *Id.* at 6 ¶ 21. Policyholders pay "premiums [which] are deposited into the accumulated value of the policy." *Id.* ¶ 22. "[T]he insurer [then] deducts certain amounts directly from premium payments and monthly deductions from the accumulated value as disclosed and authorized by the policy." *Id.* The policy expressly authorizes certain deductions. *Id.* ¶ 25. These include a "'Premium Expense Charge' of 5.0% from each premium paid into the [p]olicy before [being] deposited into the accumulated value," *id.* ¶ 26, as well as a "Monthly Deduction" from the accumulated value consisting of a $5 monthly expense charge, the cost of any rider benefits, and the "cost of insurance." *Id.* ¶¶ 27–29. Per the policy, the cost

of insurance ("COI") is calculated by Defendant using the equation Q x (R − S), where "Q" is defined as the "cost of insurance rate," "R" is defined as the "Insured's death benefit," and "S" is defined as the "accumulated value . . . prior to subtracting the cost of insurance." ECF 1-1 (McMillan's policy),[2] at 14–15; ECF 52, at 8 ¶ 33.

McMillan's complaint centers around the COI rate, "Q." Specifically, he alleges that the COI rate is defined in the policy as being "determined by [Defendant] based on [Defendant's] expectations as to future mortality experience." ECF 52, at 8 ¶ 34 (brackets in ECF 52) (quoting ECF 1-1, at 7). However, McMillan asserts that despite this definition, Defendant actually "does not determine [COI] rates based on its 'expectation as to future mortality experience[,]'" but rather "considers and uses other unlisted, non-mortality factors to determine [COI] rates, including without limitation, expense." *Id.* at 9 ¶ 38. This "impermissibly inflat[es COI] rates such that they exceed Defendant's 'expectations as to future mortality experience.'" *Id.* at 10 ¶ 40. As a result, McMillan alleges that the "higher [COI] rates used by Defendant cause the monthly [COI] charge to be greater than what is explicitly authorized by the Policy and Class Policies." *Id.* ¶ 41. "Defendant's inclusion of unlisted expense loads in the [COI] rates is not authorized under the expense provisions of the Policy." *Id.* ¶ 45. McMillan alleges that "[e]ach of Defendant's deductions for expenses in excess of the maximum expense charge amounts constitutes separate breaches of contract." *Id.* at 11 ¶ 46.

---

[2] While McMillan's policy is attached to the initial complaint, it is not attached to the operative amended complaint. Nevertheless, the Court may consider it as the amended complaint explicitly incorporates the policy, ECF 52, at 5 ¶ 12, and contracts, like the policy at issue here, are integral to complaints alleging breach of contract claims. *See, e.g., Thaler v. Donald J. Trump for President, Inc.*, 304 F. Supp. 3d 473, 477 n.5 (D. Md. 2018), *aff'd*, 730 F. App'x 177 (4th Cir. 2018) ("A contract is integral to a breach of contract claim[] . . . ."); *see also Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) ("[I]f a breach-of-contract plaintiff alleges a failure to perform an act required by the contract, the contract's description of the defendant's duties will prevail over the plaintiff's contrary characterization.").

### B.    McMillan's Policy and the Class Policies

In 1993, McMillan purchased an Executive (91) universal life ("UL") insurance policy from KCL with a policy date of July 1, 1993, and an initial specified amount of $50,000. ECF 1-1; ECF 78-3 (Declaration of Scott J. Witt), at 12–13 ¶ 13.  KCL offers other life insurance products including Better Life Plan, LifeTrack, AGP, MGP, PGP, Chapter One, Classic, Rightrack, Performer (88), Performer (91), Competitor (88), Competitor (91), Executive (88), Executive (91), Protector 50, LewerMax, Ultra 20 (93), Competitor II, Executive II, Performer II, Ultra 20 (96), all ULs, and Century II variable universal life insurance ("VUL").[3]  *Id.*  KCL uses standardized forms (13 forms for the 22 products listed), and the policies are not subject to individual negotiation from policyholders. ECF 78-3, at 7–8 ¶ 11.  The policies permit KCL to deduct certain charges as defined by the policy.  *Id.* at 14–15 ¶ 20.  KCL did not sell any of the relevant polices after 2009.  *Id.* at 16 ¶ 21.

### C.    McMillan's History with KCL

KCL sold its policies face-to-face using third-party sales agents, who were not employees of KCL, and who were not authorized to modify the policies sold.  ECF 1-1, at 14; ECF 78-3, at 16 ¶ 21.  McMillan was a third-party sales agent for KCL in the 1980s and 1990s.  ECF 93-3 (letter McMillan sent to KCL in 2019); ECF 90 (Declaration of Mark Milton), at 6 ¶ 18.

McMillan received annual reports regarding his policy activity, including a summary of transactions made under his policy during the previous year.  ECF 77-4 (annual reports issued between July 1, 1997 through July 1, 2019).  Each summary of transactions included the specific amounts of the beginning accumulated value, premium received, expense charges, cost of insurance, interest credited, partial withdrawals, ending accumulated value, surrender charge,

---

[3] A VUL differs from a UL in that a VUL policyholder can invest the contents of the account. ECF 78-3, at 20 ¶ 28.

ending loan balance, and cash surrender value. *See, e.g.*, ECF 77-4, at 6, 30, 50. As of McMillan's last annual report in the record, dated July 1, 2019, the total partial withdrawals amounted to $8,666.56, the total premiums paid were $33,896.55, and the ending accumulated value was $508.32.[4] *Id.* at 110.

In January 2010, McMillan and his wife sent a letter to Defendant expressing concerns with the life insurance policy. ECF 90-6, at 3. The letter contained a list of questions prompted by McMillan's realization that "even though [he] paid the premiums for 16 years[,] the policies will be worthless at some point even before the insured expires." *Id.* His questions included:

> 1. What is the exact date and time that each policy will become worthless? Please state the legal reason why?
> 2. Why was the owner of the policies given incorrect information pertaining to the longevity of the policies?
> 3. How many other policyholders are facing the same circumstance?
> 4. [C]ite the particular language in the contract that allows the policies to become worthless at some point?
> 5. Is the agent that sold these policies still actively representing our company?
> 6. Is there any legal action against your company based on the circumstances of this communication?

*Id.* McMillan copied his attorney on his correspondence with Defendant. *Id.* Between 2011 through 2016, McMillan received at least ten notifications from Defendant that his policy was in danger of lapsing within the next ten years. ECF 90-7, at 19–28.

In September 2016, McMillan filed a complaint regarding "premium increases/expiration of policy" to the Maryland Insurance Administration ("MIA"). *Id.* at 2–3. The MIA reached out to Defendant requesting: (1) a copy of McMillan's insurance policy, (2) a copy of McMillan's application, (3) a response addressing all the allegations made in McMillan's complaint, (4) a

---

[4] As of July 2009, McMillan had paid $17,164.80 in premiums on the policy and had partially withdrawn $2,641.56, resulting in an ending accumulated value of $6,216.98. ECF 77-4, at 50. In the year preceding a July 1, 2011, report, McMillan had withdrawn $6,000, making his total premiums paid to date $19,221.00, the total partial withdrawals $8,666.56, and the ending accumulated value $427.59. *Id.* at 62.

copy of notices sent to McMillan regarding the premium increase, and (5) a demonstration of how the increased premium was determined. *Id.* at 8. Defendant sent their response to MIA, ECF 90-8, at 7–10, which was sent to McMillan in January 2017, *id.* at 2–4.

In September 2019, McMillan sent another letter to Defendant, asking for "a legal review of the policy," specifically a "legal stance on what kind of policy, terms, and premiums [] would be needed if [Defendant] reinstated this policy." ECF 93-3, at 2. It is unclear from the record whether McMillan ever received a response to this letter.

### D.   Procedural History

McMillan filed his initial civil complaint on May 5, 2022. ECF 1. The original complaint alleged five counts for which McMillan sought recovery: (1) breach of contract related to KCL using unlisted non-mortality factors in the COI rate, (2) breach of contract related to KCL loading the COI rate with expense charges, (3) breach of contract by failing to adjust the COI rate with improving expectations as to future mortality experience, (4) conversion, and (5) declaratory and injunctive relief. *Id.* at 15–19 ¶¶ 61–93. Defendant filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on all counts. ECF 24. Judge Hollander denied the motion to dismiss for the breach of contract claims (counts I through III), granted the motion as to the punitive damages sought under the conversion claim (count IV) but otherwise denied the motion on this claim, and granted the motion on the claim for declaratory and injunctive relief (count V). ECF 48 (memorandum opinion); ECF 49 (order).

Thereafter, McMillan amended the complaint, ECF 52, and Defendant filed a partial motion to dismiss pursuant to Rule 12(b)(6), seeking dismissal of the punitive damages McMillan requested relating to the breach of contract claims and the conversion claim. ECF 54. Judge Hollander granted the motion as to the punitive damages sought in connection with the

6

breach of contract claims but denied it as to the "punitive damages [sought] in connection with

his conversion claim, to the extent that Missouri law governs the claim." ECF 66 (order); *see*

*also* ECF 65 (memorandum opinion). Only McMillan's breach of contract claims (counts I–III)

and conversion claim (count IV) remain, as limited by the Court. ECFs 65 and 66.

The amended complaint includes the following definition of the class of similarly situated

persons whom McMillan seeks to represent pursuant to Federal Rule of Civil Procedure 23, and

remains undisturbed by the prior dismissal orders:

> All persons who own or owned a Better Life Plan, Better Life Plan Qualified,
> LifeTrack, AGP, MGP, PGP, Chapter One, Classic, Rightrack (89), Performer
> (88), Performer (91), Prime Performer, Competitor (88), Competitor (91),
> Executive (88), Executive (91), Protector 50, LewerMax, Ultra 20 (93),
> Competitor II, Executive II, Performer II, Ultra 20 (96), Century II VUL, Alliance
> VUL, or Accumulator VUL life insurance policy issued in Maryland, that was
> issued or administered by Defendant, or its predecessors in interest.

ECF 52, at 3 ¶ 5. The above definition explicitly excludes from the class:

> any entity in which Defendant has a controlling interest, any of the officers,
> directors, employees, or sales agents of the Defendant, the legal representatives,
> heirs, successors, and assigns of the Defendant, anyone employed with Plaintiff's
> counsels' firms, any Judge to whom this case is assigned, and his or her
> immediate family.

*Id.* at 3 n.1.[5]

The case was subsequently reassigned to the undersigned. On January 17, 2024,

McMillan moved to certify the class and designate himself class representative.[6] ECF 77. He

seeks certification of the following class:

---

[5] The initial complaint included the same class definition and exception. *See* ECF 1, at 3 ¶ 5, at 3
n.1.

[6] The memorandum of law and several exhibits to the motion, were filed under seal as they
contain information marked as confidential by Defendant. ECF 78 (motion to seal,
memorandum in support of motion for class certification, and exhibits); ECF 82 (order granting
motion to seal).

> All persons who own or owned a Better Life Plan, LifeTrack, AGP, MGP, PGP, Chapter One, Classic, Rightrack (89), Performer (88), Performer (91), Competitor (88), Competitor (91), Executive (88), Executive (91), Protector 50, LewerMax, Ultra 20 (93), Competitor II, Executive II, Performer II, Ultra 20 (96), or Century II VUL life insurance policy issued in the state of Maryland, that was issued or administered by Defendant or its predecessors in interest, and that was active on or after January 1, 2002.

ECF 77, at 1. Specifically excluded from this proposed class are:

> Defendant Kansas City Life Insurance Company ("KCL"); any entity in which KCL has a controlling interest; any of the officers, directors, or employees of KCL; the legal representatives, heirs, successors, and assigns of KCL; anyone employed with Plaintiff's counsel's firms; and any Judge to whom this case is assigned, and his or her immediate family.

*Id.* at 1 n.1. After the motion for class certification became fully ripe, Defendant then filed the current motion to dismiss for lack of subject matter jurisdiction. ECF 93. After *that* motion was fully ripe, Defendant filed the motion for leave to supplement its opposition to the motion for class certification. ECF 106. All three motions are now ripe for disposition.

## II. DISCUSSION

The pending motions involve overlapping arguments. The Court will first address the motion to dismiss for lack of subject matter jurisdiction.

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Defendant moves to dismiss the amended complaint for lack of subject matter jurisdiction. ECF 93. The exclusion provision of the class definition in the amended complaint excludes from the class:

> any entity in which Defendant has a controlling interest, any of the officers, directors, employees, or *sales agents* of the Defendant, the legal representatives, heirs, successors, and assigns of the Defendant, anyone employed with Plaintiff's counsels' firms, any Judge to whom this case is assigned, and his or her immediate family.

ECF 52, at 3 n.1 (emphasis added). Defendant argues that this language excluding "sales agents" of the Defendant necessarily excludes McMillan from the class he seeks to represent, as

McMillan sold life insurance policies on behalf of Defendant in the past. ECF 93-1, at 1–3. Defendant further states that because plaintiffs are bound by the class definition listed in the complaint, McMillan, as a former sales agent, does not fit his own class definition. *Id.* at 5. So, according to Defendant, if McMillan is not a member of the class, he does not have standing to bring this class action, he cannot meet the jurisdictional requirements under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), and cannot otherwise meet the requirements of diversity jurisdiction under 28 U.S.C. § 1332(a). ECF 93-1, at 4–5.

McMillan agrees that he did, in fact, sell Defendant's life insurance policies over twenty years ago but argues that the pled class definition does not exclude *previous* sales agents who were affiliated with Defendant in the past. ECF 97, at 2. McMillan further contends that exclusion provisions in class definitions are designed to avoid conflicts of interest, and there is no reason to exclude individuals previously affiliated with Defendant. *Id.* Thus, McMillan argues that the Court should construe the exclusion provision as referring only to present, not past, sales agents of Defendant. *Id.*

### 1.    Legal Standard

Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss a complaint for a lack of subject matter jurisdiction. Federal courts are courts of limited jurisdiction and "may not exercise jurisdiction absent a statutory basis." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). The Court must have subject matter jurisdiction either based on diversity of citizenship or a federal question. 28 U.S.C. §§ 1331, 1332(a)(1). "Rule 12(b)(1) governs motions to dismiss for mootness and for lack of standing, which pertain to subject matter jurisdiction." *Stone v. Trump*, 400 F. Supp. 3d 317, 333 (D. Md. 2019); *see also Pruitt v. Resurgent Cap. Servs.*, LP, 610 F. Supp. 3d 775, 779 (D. Md. 2022) (explaining that motions to

dismiss for lack of standing are considered under Rule 12(b)(1)). "Motions to dismiss for lack of subject matter jurisdiction are properly granted where a claim fails to allege facts upon which the court may base jurisdiction." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005) (citing *Crosten v. Kamauf*, 932 F. Supp. 676, 679 (D. Md. 1996)).

### 2. Facial vs. Factual Challenge

Challenges to the Court's subject matter jurisdiction may be facial, where the Court looks only to the assertion of jurisdiction as pled in the complaint, or factual, where the Court must resolve underlying factual disputes that implicate the Court's subject matter jurisdiction. *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Typically, in facial challenges to subject matter jurisdiction, the Court looks only at the complaint and assumes the facts therein to be true. *See id.* The Court must also "make all reasonable inferences in the plaintiff's favor." *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003) (citing *DeBauche v. Virginia Commonwealth University*, 7 F. Supp 2d 718, 721 (E.D. Va. 1998)). In factual challenges, "the district court may [] go beyond the allegations of the complaint and resolve the jurisdictional facts in dispute by considering evidence outside the pleadings, such as affidavits." *U.S. ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 348 (4th Cir. 2009) (citing *Adams*, 697 F.2d at 1219) (additional citations omitted). Further, in such challenges, "[t]he burden of proving subject matter jurisdiction on a motion to dismiss is on the plaintiff, the party asserting jurisdiction." *Adams*, 697 F.2d at 1219.

Defendant explicitly asserts that it brings a factual jurisdictional challenge. *See* ECF 93-1, at 3–4. The motion also includes evidence in support, *see* ECFs 93-2 (declaration of Angela Ramson, counsel for Defendant) and 93-3 (2019 letter sent by McMillan to KCL), and cites to evidence submitted with the class certification briefing, *see* ECF 93-1, at 2 (citing ECF 90 (Milton Decl.), at 6 ¶ 18). However, that fact—that McMillan is a former sales agent—is not in dispute. *See* ECF 97, at 2 (Plaintiff's response noting that "Plaintiff, as someone who sold KCL

policies decades ago, did not exclude himself from the putative class"). And the answer to whether McMillan was a sales agent does not resolve the central contention of Defendant's motion. The Court must then determine whether the amended complaint's proposed class definition includes McMillan as a past sales agent. The answer to that question turns on the interpretation of the amended complaint, which makes the dispute more akin to a facial, rather than a factual, challenge. Defendant does not argue "that the jurisdictional allegations of the complaint are not true," as a defendant raising a *factual* challenge would. *Kerns v. U.S.*, 585 F.3d 187, 192 (4th Cir. 2009) (citing *Adams*, 697 F.2d at 1219). Rather, Defendant's true challenge concerns the sufficiency of the amended complaint's allegations. *See* ECF 93-1, at 4 ("McMillan is not a member of the class as pled in the Amended Complaint[.]"), at 5 ("By choosing to exclude sales agents from the putative class, Plaintiff has effectively plead [sic] himself out of a claim—and of federal jurisdiction."), at 5 ("Plaintiff's operative pleading fails to trigger the jurisdictional authority afforded by [CAFA]."); ECF 98, at 1 ("Plaintiff did not adequately plead a class action under Rule 23 and therefore cannot satisfy the jurisdictional requirements of CAFA[.]"). The Court, therefore, will proceed by considering the evidence proffered, as in a factual challenge, but by making all reasonable inferences in interpreting the amended complaint in Plaintiff's favor, as it would do when evaluating a facial challenge.

### 3.   Analysis

It is well established that a representative plaintiff must be a member of the class they seek to represent. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997) (citations omitted). While McMillan removed the "sales agent" restriction in the motion for class certification,[7] *see* ECF 77, at 1 n.1, Defendant asserts that McMillan is nevertheless bound by the

---

[7] McMillan explained his decision to modify the exclusion in the opposition to the motion to dismiss: "KCL sells its policies only through third-party salespeople. Accordingly, in moving

proposed class definition in the amended complaint, ECF 93-1, at 5. In doing so, Defendant relies exclusively on out-of-circuit district court cases. *Id.* However, the Fourth Circuit does not appear to adhere to such rigidity. *See Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 431 (4th Cir. 2003) (permitting plaintiffs to deviate from claims pled in the original complaint at the class certification stage (citing 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1219, at 188–89 (2d ed. 1990); Fed. R. Civ. P. 23(c)(4)(A)). This Court and others have recognized the flexibility involved in crafting a class definition and have permitted deviation from the complaint at the class certification stage. *See Piotrowski v. Wells Fargo Bank, NA*, Civ. No. DKC-11-3758, 2015 WL 4602591, at *5 (D. Md. July 29, 2015) ("[T]he proper inquiry is whether Plaintiffs' proposed class definition results in an ascertainable and administratively feasible class and meets Rule 23 requirements, not whether it precisely tracks the allegations and class definition in the amended complaint."); *Robidoux v. Celani,* 987 F.2d 931, 937 (2d Cir. 1993) ("A court is not bound by the class definition proposed in the complaint and should not dismiss the action simply because the complaint seeks to define the class too broadly."); *Fobbs v. Hunt*, No. 3:21CV26 (DJN), 2021 WL 1792087, at *16 (E.D. Va. May 5, 2021) (noting that "Rule 23(c)(1)(C) 'explicitly contemplates the amendment of a class certification order before final judgment'" (quoting *Henderson v. Corelogic Nat'l Background Data, LLC*, No. 3:12CV97, 2016 WL 4611571, at *4 (E.D. Va. Sept. 2, 2016))); *Abraham v. WPX Energy Prod., LLC*, 322 F.R.D. 592, 611 (D.N.M. 2017) (noting that "other Courts of Appeals, besides the Tenth Circuit, "have at least implied that a court need not hold a plaintiff to the class definition in the operative complaint" and "conclud[ing] that a plaintiff is not bound to

---

for class certification, Plaintiff removed the exclusion for even current sales agents of KCL's policies." ECF 97, at 2·n.1 (citation omitted).

the class definition in the operative complaint for purposes of a second motion to certify a class"). As our sister court put it:

> Although some courts have required an amendment of the complaint where the plaintiffs seek to revise the class definition, many courts have held exactly the opposite: that it is inappropriate to constrain the parties to the class definition propounded in the plaintiff's pleadings, particularly in light of the "ongoing refinement and give-and-take inherent in class action litigation, particularly in the formation of a workable class definition."

*Henderson*, 2016 WL 4611571, at *4 (quoting *In re Monumental Life Ins. Co.*, 365 F.3d 408, 414 (5th Cir. 2004)).

Even if McMillan were bound by the class definition as pled in the amended complaint, the Court is not convinced that it expressly excludes McMillan. First, the Fourth Circuit has explained that "federal courts should 'give Rule 23 a liberal rather than a restrictive construction, adopting a standard of flexibility in application which will in the particular case 'best serve the ends of justice for the affected parties and . . . promote judicial efficiency.'" *Gunnells*, 348 F.3d at 424 (internal quotation marks omitted) (quoting *In re A.H. Robins*, 880 F.2d 709, 740 (4th Cir. 1989)). The Fourth Circuit has also rejected the interpretation that a pleaded class definition that does not specify a time period for a group defined within the class necessarily encompasses every member of that group, past and present. *Johnson v. Advance Am.*, 549 F.3d 932, 937 (4th Cir. 2008) (holding that the plaintiff's proposed class definition of "[a]ll [c]itizens of South Carolina" meant citizens of South Carolina at the time the complaint was filed, not persons who were at any time South Carolina citizens). While it is true that in so holding, the *Johnson* court relied on 28 U.S.C. § 1332(d)(7) for the proposition that "citizenship is to be determined as of the date of the complaint or other paper that first indicates the existence of federal jurisdiction," 549 F.3d at 937, Defendant does not point the Court to any authority that would compel a different result here.

-13

In support of Defendant's argument that McMillan crafted a class definition that excludes himself from the class, Defendant relies primarily on *Muhammad v. PNC Bank*, No. 15-cv-16190, 2016 WL 5843477 (S.D. W. Va. Oct. 4, 2016), which is cited in Defendant's reply. *See* ECF 98, at 1, 4. In *Muhammad*, the Southern District of West Virginia denied the motion for class certification, finding that "[t]he plaintiff crafted his definitions so that the plaintiff's own citizenship exclude[d] him from the classes." 2016 WL 5843477, at *4 (citation omitted). The *Muhammad* plaintiff's complaint specified that the proposed class was limited to "[a]ll West Virginia citizens *at the time of the filing* of this action," and there was no dispute that the plaintiff resided in Indiana when the complaint was filed. *Id.* at *3 (emphasis added). Therefore, the complaint unambiguously excluded the named plaintiff from the putative class. *Id.* at *4. In the present case, however, McMillan's proposed class definition in the amended complaint does not clearly exclude him, as there is no explicit temporal component. Thus, *Muhammad*'s reasoning loses force when applied to the facts present here.

Given that the amended complaint's class definition does not unambiguously exclude McMillan, and considering that in interpreting the amended complaint, the Court must make all reasonable inferences in the plaintiff's favor, the Court declines to find that the pled class definition excludes past KCL sales agents, like McMillan. As such, the Court **DENIES** Defendant's motion to dismiss.

### B.    Motion to Certify Class

#### 1.    Legal Standard

Rule 23 enumerates four "threshold requirements applicable to all class actions, commonly referred to as 'numerosity,' 'commonality,' 'typicality,' and 'adequacy.'" *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 654 (4th Cir. 2019) (citing Fed. R. Civ. P. 23(a)).

Commonality, typicality, and adequacy "'tend to merge,' with commonality and typicality 'serv[ing] as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 337 (4th Cir. 1998) (quoting *General Tel. Co.*, 457 U.S. 147, 157 n.13 (1982)). The Fourth Circuit also reads into Rule 23 an implied requirement of "ascertainability," meaning that the Court "court can readily identify the class members in reference to objective criteria." *Krakauer*, 925 F.3d at 654 (quoting *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014)).

"In seeking class certification under Rule 23, the plaintiff has the burden of demonstrating that the requirements for class-wide adjudication have been met." *Krakauer*, 925 F.3d at 654 (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)); *see also Thorn v. Jefferson Pilot Life Ins. Co.*, 445 F.3d 311, 321 (4th Cir. 2006) (citations omitted). "Rule 23 holds plaintiffs to a higher bar than a pleading standard." *Stafford v. Bojangles' Restaurants, Inc*, --- F.4th ---, No. 23-2287, 2024 WL 5131108, at *4 (4th Cir. Dec. 17, 2024) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "Although Rule 23 does not give district courts a 'license to engage in free-ranging merits inquiries at the certification stage,' a court should consider merits questions to the extent 'that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.'" *EQT Prod. Co.*, 764 F.3d at 357–58 (quoting *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013)).

After a plaintiff demonstrates that the proposed class meets the threshold criteria, they must then demonstrate that the proposed class falls into one of the allowable types of class actions enumerated by the rule. Fed. R. Civ. P. 23(b). The class action type at issue here is laid

15

out in Rule 23(b)(3), which requires that the Court find "[1] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and [2] that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* These requirements are often referred to as "predominance" and "superiority." *Krakauer*, 925 F.3d at 655. "The predominance requirement is similar to but 'more stringent' than the commonality requirement of Rule 23(a)." *Thorn*, 445 F.3d at 319 (quoting *Lienhart v. Dryvit Sys.*, 255 F.3d 138, 146 n.4 (4th Cir. 2001)). "Since the requirements of Rule 23 are often enmeshed in the factual and legal issues comprising the plaintiffs' cause of action, the district court must rigorously examine the core issues of the case at the certification stage." *Krakauer*, 925 F.3d at 654 (citation omitted).

2.   Analysis

McMillan moves to certify the following class pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3):

> all persons who own or owned a Better Life Plan, LifeTrack, AGP, MGP, PGP, Chapter One, Classic, Rightrack (89), Performer (88), Performer (91), Competitor (88), Competitor (91), Executive (88), Executive (91), Protector 50, LewerMax, Ultra 20 (93), Competitor II, Executive II, Performer II, Ultra 20 (96), or Century II VUL life insurance policy issued in Maryland, that was issued or administered by KCL or its predecessors in interest, and that was active on or after January 1, 2002.

ECF 78-2, at 3. The class excludes "KCL; any entity in which KCL has a controlling interest; any of the officers, directors, or employees of KCL; the legal representatives, heirs, successors, and assigns of KCL; anyone employed with Plaintiff's counsel's firms; and any Judge to whom this case is assigned, and his or her immediate family." *Id.* at 3 n.1.

McMillan argues that the Court should certify the class because the proposed class is ascertainable, ECF 78-2, at 20, and satisfies the four requirements of Rule 23(a) (numerosity,

commonality, typicality, and adequacy of representation), *id.* at 20–26, as well as Rule 23(b)(3), *id.* at 26–38. He points to the fact that similar, and some nearly identical, classes have been certified in other jurisdictions. *See id.*, at 2–3 (citing *Karr v. Kansas City Life Ins. Co.*, No. 1916-CV26645, 2021 WL 7709466 (Mo. Cir. Ct. July 12, 2021)[8]; *Meek v. Kansas City Life Ins. Co.*, No. 19-00472-CV-W-BP, 2022 WL 499049 (W.D. Mo. Feb. 7, 2022); *Meek v. Kansas City Life Ins. Co.*, 664 F. Supp. 3d 923 (W.D. Mo. 2023) (summary judgment decision); *Sheldon v. Kansas City Life Ins., Co.*, No. 1916-CV26689, 2022 WL 2015591, (Mo. Cir. Ct. May 11, 2022); *Fine v. Kansas City Life Ins. Co.*, No. 222CV02071SSSPDX, 2023 WL 7393027, at *3 (C.D. Cal. Nov. 6, 2023), *reconsideration denied*, 2024 WL 356463 (C.D. Cal. Jan. 25, 2024), *petition for permission to appeal denied*, No. 24-747 (9th Cir. Mar. 27, 2024)). The two federal courts, *Meek* and *Fine*, certified nearly identical classes under Rule 23 for classes in Kansas and California, respectively.[9]

---

[8] The *Karr* class certification decision was affirmed on appeal. *See Karr v. Kansas City Life Ins. Co.*, --- S.W.3d ---, No. WD 86550, 2024 WL 4280503, at *23 (Mo. Ct. App. Sept. 24, 2024), *reh'g and/or transfer denied* (Oct. 29, 2024).

[9] The *Meek* and *Fine* class definitions both contained two additional policies not included in McMillan's proposed class definition (Better Life Plan Qualified and Prime Performer, both of which were initially included in the amended complaint's definition). Further, the *Meek* class did not include the Century II VUL. The *Meek* court certified the following class:

> All persons who own or owned a Better Life Plan, Better Life Plan Qualified, LifeTrack, AGP, MGP, PGP, Chapter One, Classic, Rightrack (89), Performer (88), Performer (91), Prime Performer, Competitor (88), Competitor (91), Executive (88), Executive (91), Protector 50, LewerMax, Ultra 20 (93), Competitor II, Executive II, Performer II, or Ultra 20 (96) life insurance policy issued or administered by Defendant, or its predecessors in interest, that was active on or after January 1, 2002, and purchased the life insurance policy while domiciled in Kansas. Excluded from the Class are: KC Life; any entity in which KC Life has a controlling interest; any of the officers, directors, employees, or sales agents of KC Life; the legal representatives, heirs, successors, and assigns of KC Life; anyone employed with Plaintiff's counsel's firms; and any Judge to whom this case is assigned, and his or her immediate family.

Defendant first argues that class certification is improper because McMillan has moved to certify a class broader than he alleged in the amended complaint, as the motion's proposed class no longer excludes sales agents, and, as it argued in the motion to dismiss, that McMillan is bound by the amended complaint's proposed definition. *See* ECF 88, at 10–18. Defendant also counters that McMillan has failed to meet any of Rule 23(a) or (b)(3)'s requirements. *Id.* at 19–30.

As a preliminary matter, the Court disagrees that the proposed class is improperly broad or, for the reasons explained above, that Plaintiff is bound by the class definition proposed in the amended complaint. The certification motion's class definition is not broader than that of the amended complaint. As noted, the amended complaint's class definition did not include a temporal component, so it could plausibly be read as only excluding sales agents at the time the complaint was filed. As Plaintiff explains, "only independent third parties sell KCL's policies and KCL has not sold these policies since 2009." ECF 96, at 7 (citing ECF 88 (Defendant's opposition), at 11, 22; ECF 78-3 (Witt Decl.), at 16 ¶ 21)). Thus, the change in the class definition did not alter the number of potential class members, and the Court declines to deny class certification on this basis.

---

*Meek*, 2022 WL 499049, at *13. The *Fine* court certified the following class:

> All persons who own or owned a Better Life Plan, Better Life Plan Qualified, LifeTrack, AGP, MGP, PGP, Chapter One, Classic, Rightrack (89), Performer (88), Performer (91), Prime Performer, Competitor (88), Competitor (91), Executive (88), Executive (91), Protector 50, LewerMax, Ultra 20 (93), Competitor II, Executive II, Performer II, Ultra 20 (96), or Century II VUL life insurance policy issued in California, that was issued or administered by Defendant, or its predecessors in interest, and that was active on or after January 1, 2002.

*Fine*, 2023 WL 7393027, at *8. It is not clear whether any exclusions applied to the *Fine* class.

i.      *Numerosity and Ascertainability*

Plaintiff asserts that the numerosity requirement is met because, citing the declaration of Scott J. Witt, Plaintiff's proposed actuarial expert, who used data provided by KCL, KCL has issued 2,115 policies in Maryland that are included in the proposed class definition. ECF 78-2, at 20 (citing ECF 78-3, at 16 ¶ 21). Defendant counters that Witt's declaration does not meet the requisite burden of proof because the statement is "merely a conclusion" and "Witt himself acknowledges distinguishing factors among the purported 2,115 Class Policies that call into question whether this number is even appropriate given the Plaintiff's claims in this case." ECF 88, at 19. In reply, Plaintiff asserts that the *Fine* court rejected the same argument, finding that KCL was improperly conflating commonality and numerosity. *See* ECF 96, at 8–9 (citing *Fine*, 2023 WL 7393027, at *3).

First, the 2,115 number is plainly sufficient to satisfy numerosity, as joinder of this many individuals would be impracticable. Fed. R. Civ. P. 23(a)(1); *In re Under Armour Securities Litigation*, 631 F. Supp. 3d 285, 300 (D. Md. 2022) ("[G]enerally, courts find classes of at least 40 members sufficiently large to satisfy the impracticability requirement[.]" (citing *Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492, 497 (D. Md. 1998))). The Court is also satisfied that Witt's declaration is sufficient to satisfy Plaintiff's burden of proof.[10] To the extent Defendant argues that numerosity is not satisfied because of differences between the policies, this Court agrees with *Fine* and similarly finds that Defendant's argument is more appropriately considered under the commonality factor.

---

[10] The Court notes that the *Fine* found Witt's declaration attesting to the number of class policies issued by KCL "sufficient to show by a preponderance of the evidence that joinder of the potentially large number of policyholders is impracticable." 2023 WL 7393027, at *2–3.

The Court also finds that the class "exist[s] and [is] 'readily identifiable' or 'ascertainable' by the court through 'objective criteria.'" *Amaya v. DGS Construction, LLC*, 326 F.R.D. 439, 446 (D. Md. 2018) (citing *EQT Prod. Co.*, 764 F.3d at 358). Indeed, Witt has already identified the class policies issued in Maryland, ECF 78-3, at 16 ¶ 2, making the class readily identifiable using objective criteria.

### ii.    *Commonality and Predominance*

To meet the commonality prong, "Plaintiffs must establish that the common contention is one 'capable of classwide resolution' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Stafford*, 2024 WL 5131108, at *4 (quoting *Wal-Mart*, 564 U.S. at 350). "In a Rule 23(b)(3) class action like this one, 'the "commonality" requirement of Rule 23(a)(2) is 'subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class predominate over' other questions.'" *1988 Trust for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 522 (4th Cir. 2022) (quoting *Lienhart*, 255 F.3d at 146 n.4); *see also Amchem Prods.*, 521 U.S. at 609. "So 'the mere fact that the defendants engage in uniform conduct is not, by itself, sufficient to satisfy' the commonality requirement here." *1988 Tr. for Allen Child. Dated 8/8/88*, 28 F.4th at 522 (quoting *EQT Prod. Co.*, 764 F.3d at 366). "Rather, in a Rule 23(b)(3) case, '[t]he predominance inquiry focuses not only on the existence of common questions, but also on how those questions relate to the controversy at the heart of the litigation.'" *Id.* (quoting *EQT Prod. Co.*, 764 F.3d at 366). Predominance "calls upon courts to give careful scrutiny to the relation between common and individual questions in a case." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a

common question is one where 'the same evidence will suffice for each member to make a prima

facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Id.* (alterations in

*Tyson Foods*) (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196–197 (5th ed.

2012)).

Plaintiff asserts that commonality and predominance are met because the policies at issue

include "materially identical terms" and that KCL "engaged in a common course of conduct in

performing those terms." ECF 78-2, at 21, at 27. Citing to the declaration of his actuarial expert

Witt, Plaintiff asserts that "[a]fter entering into materially identical contracts, KCL uniformly

used undisclosed factors to determine its COI rates for all policy owners." *Id.* at 21–22; *see also*

*id.* at 27. Plaintiff asserts that "the Class Policies are standardized form contracts, with

materially identical terms, not subject to individualized negotiation, and, as explained below,

each claim will be resolved under a single state's law[,]" making "the case . . . replete with

common questions of law and fact that predominate over any questions affecting individual class

members." *Id.* at 27. More specifically, Plaintiff asserts that the "claims are subject to common

proof," that "[d]amages can be determined on a class-wide basis," and that "KCL's statute of

limitations affirmative defense does not defeat predominance." *Id.* at 28–37.

Defendant argues that Plaintiff has not demonstrated commonality because "(1) Plaintiff

cannot demonstrate that KCL's conduct was uniform; (2) the Class Policies are not materially

identical; (3) the ambiguity in contract requires extrinsic evidence; and (4) KCL's affirmative

defenses require individualized considerations." ECF 88, at 19. It further argues that he has not

demonstrated predominance because "the subject policies include different COI terms that

directly impact [Plaintiff's actuarial expert] Witt's damages methodology," especially as to the

conversion claim, *id.* at 31–34, because a significant number of putative class members suffered

no injury, *id.* at 34–35, and because statute of limitations defenses are too individualized, precluding a finding a predominance, *id.* at 35–36. The Court addresses each of these arguments in turn.

Defendant argues that it "determines COI rates on a product-by-product basis," which it contends Witt concedes. ECF 88, at 20. But, as Plaintiff points out in reply, "KCL's contention that it engaged in separate pricing exercises for each product is irrelevant," as the claims concern whether "KCL used impermissible factors to determine the COI rates in each purportedly separate exercise (its common practice among all Class Policies) . . . ." ECF 96, at 9. That question extends to each product. Nor does it matter that different products may expressly include different factors in the COI rate. Again, the same injury—reduced accumulated value resulting from a COI rate impermissibly inflated by inclusions of unlisted non-mortality factors (count I) and expense factors (count II), which KCL never adjusted (count III)—is alleged across all products, raising a common question as to all of the class policies.

Plaintiff has presented evidence, namely, the declaration of actuary expert Witt who attested to having reviewed all the relevant standard policies, that the relevant language used across the policies is materially identical. *See* ECF 78-3, at 16–24 ¶¶ 21–41. Defendant argues that the Century II VUL product is "materially distinct from all UL products because it is accompanied by additional disclosures at the time of purchase." ECF 88, at 21. It cites to the declaration of its own actuarial expert and to the 2004 prospectus for the Century II VUL policy. *See* ECF 88, at 22 (citing ECF 90-2, at 6–7 (declaration of Timothy Pfeifer); ECF 90-2, at 67 (Century II VUL prospectus from 2004)).

The Century II VUL prospectus from 2004 advises that

[KCL] may realize a profit on any charges and deductions. [KCL] may use this profit for any purpose, including payment of distribution charges.

22

. . .

> This [cost of insurance charge] compensates us for the expense of providing
> insurance coverage. The charge depends on a number of variables and will vary
> from Contract to Contract and from month to month.

ECF 90-2, at 67. The next line of the prospectus specifies that "[t]he cost of insurance *rate* for a

Contract on a Monthly Anniversary Day is based on the Insured's Age at issue, sex, number of

completed Contract Years, Specified Amount and risk class." *Id.* (emphasis added). It goes on:

> We guarantee that the cost of insurance rates will not exceed the maximum cost of
> insurance rates set forth in the Contracts.

. . .

> Our current cost of insurance rates may be less than the guaranteed rates that are
> set forth in the Contract. We will determine current cost of insurance rates based
> on our expectations as to future mortality experience.

*Id.*

First, KCL does not argue that the prospectus is part of the contract, so the relevance of

the additional disclosures contained therein is not entirely clear.[11]    Second, the prospectus does

not, as KCL contends, "advise[] all policyholders that expenses and profits may be included in

the COI rate." ECF 88, at 22. In fact, the prospectus reiterates the factors that will be included

in the COI rate, and it specifies that KCL "will determine current cost of insurance rates based on

our expectations as to future mortality experience." ECF 90-2, at 67. The VUL policy is not

materially different from the UL policies in a way that impacts the question of class certification.

---

[11] The single case Defendant cites for the proposition that VUL policyholders (and UL
policyholders who considered VUL products) would be more informed than UL policyholders is
a securities case, not a class action or breach of contract case. *Dodds v. Cigna Sec., Inc.*, 12 F.3d
346, 347 (2d Cir. 1993) ("We hold that when an investor is provided prospectuses that disclose
that certain investments are risky and illiquid, she is on notice for purposes of triggering the
statute of limitations that several such investments might be inappropriate in a conservative
portfolio.").

Nor is it fatal to class certification that McMillan does not own a Century II VUL policy. As noted above, Plaintiff has alleged the same injury across products. *Spegele v. USAA Life Ins. Co.*, 336 F.R.D. 537, 552 (W.D. Tex. 2020) (finding commonality met where the question of "whether Defendant used factors outside those enumerated in the Class Policies to determine its COI Rates will rely on the same evidence throughout the class").

Defendant further argues that Plaintiff "fails to prove [that] the commonality requirement has been satisfied as a result of this Court's express rulings that the policy language is ambiguous with respect to Counts I and III." ECF 88, at 22 (citing ECF 48, at 23–24). In ruling on the motion to dismiss, Judge Hollander found "ambiguity in the terms of the Policy as to the factors that [KCL] may use to calculate COI." ECF 48, at 23. She further found that "the Policy is also ambiguous with respect to defendant's duty to update the COI to reflect future mortality expectations" and "as to mortality considerations with respect to COI rates." *Id.* at 23–24. Defendant argues that the extrinsic evidence necessary to resolve these ambiguities "is highly individualized because the purchase process for every product (UL or VUL) involves an individualized conversation—often face-to-face—with an independent salesperson (not a KCL employee)." ECF 88, at 22. The Court disagrees.

It is true that in Maryland,[12] "[i]If a contract provision is ambiguous," generally "'the narrow bounds of the objective approach give way,' and the court may consider extrinsic evidence to ascertain the mutual intent of the parties." *Impac Mortg. Holdings, Inc. v. Timm*, 255 A.3d 89, 96 (Md. 2021) (quoting *Credible Behavioral Health, Inc. v. Johnson*, 220 A.3d 303, 311 (Md. 2019)). And while the use of individualized extrinsic evidence in contract interpretation may often create an "irresolvable paradox" at the commonality stage, *see Gray v.*

---

[12] The parties appear to agree that Maryland law applies to the breach of contract claims.

*Hearst Commc'ns, Inc.*, 444 F. App'x 698, 702 (4th Cir. 2011) (Wilkinson, J., arguing in dissent that the commonality prong had not been met because "the integrated contracts in fact lack any uniform distribution term to supply the necessary commonality of law or fact"), that is not the case here. The contracts at issue here are insurance policies whose relevant terms are materially identical and uniform. *See* ECF 78-3, at 16–24 ¶¶ 21–41. Further, "[n]o agent has the authority to make any changes or waive any of the terms of [the] policy." ECF 1-1, at 14.

With adhesion contracts, which "involve[e] non-negotiable terms and a vast bargaining/information imbalance between the parties," "the extrinsic evidence that will assist the fact finder in resolving the instant breach of contract claim consists of uniform documents, disclosures, and practices." *In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*, 325 F.R.D. 136, 157 (D.S.C. 2018) (applying South Carolina law); *Walther v. Sovereign Bank*, 872 A.2d 735, 746 (Md. 2005) ("A contract of adhesion has been defined as one 'that is drafted unilaterally by the dominant party and then presented on a "take-it-or-leave-it" basis to the weaker party who has no real opportunity to bargain about its terms.'" (quoting Restatement (Second) of Conflict of Laws § 187 cmt. b (1971))); *see also Custom Hair Designs by Sandy v. Cent. Payment Co., LLC*, 984 F.3d 595, 601 (8th Cir. 2020) (finding predominance and commonality met where "[t]he relevant contract term was uniform"); *McClure v. State Farm Life Ins. Co.*, 341 F.R.D. 242, 252 (D. Ariz. 2022) ("If the Court were to accept [the insurance company's] argument, no breach of contract case could ever obtain class certification because every case would depend upon an individual's understanding of the agreement he had signed." (internal quotation marks and citation omitted)).

This Court has previously embraced the reasoning employed by the *TD Bank* court in finding the predominance (and, by extension, commonality) requirements to be satisfied. *See In*

*re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 341 F.R.D. 128, 156–57 (D. Md. 2022) (distinguishing *EQT Prod. Co.* and *Broussard* because the contracts at issue there were not adhesion contracts), *vacated and remanded sub nom. In re Marriott Int'l, Inc.*, 78 F.4th 677 (4th Cir. 2023), *and reinstated by In re Marriott Int'l Customer Data Sec. Breach Litig.*, 345 F.R.D. 137 (D. Md. 2023). The Restatement (Second) of Contracts also explains that a standardized agreement "is interpreted wherever reasonable as treating alike all those similarly situated, without regard to their knowledge or understanding of the standard terms of the writing." Restatement (Second) of Contracts § 211(2).

Applying this reasoning here, a conversation with a third-party sales agent, whom KCL readily admits is not their employee, or a policyholder's subjective view at the time they executed the policy, would not bear on the interpretation of the policies, including what factors may be included in the COI rate. Thus, the potential use of extrinsic evidence, which would apply to interpret the policies class wide, does not defeat the Court's finding that Plaintiff has established commonality and predominance sufficient to warrant class certification.

As to Defendant's assertion that some putative class members are uninjured either because they have elected a policy under which they do not have access to the account value except in limited circumstances, because their policies are inactive, or because the policy did not otherwise result in an active contract, defeating predominance, ECF 88, at 34–35, such challenges ultimately go to damages, not liability, and do not defeat class certification.

Multiple courts across the country have rejected similar challenges to the same actuary expert's damages methodology, including in cases involving the same policies at issue here. *See Fine* 2023 WL 7393027, at *8 (finding Witt's methodology "sufficient to demonstrate that damages can be calculated on a classwide basis" to establish predominance); *Meek*, 2022 WL

499049, at *7 (agreeing with Defendant that there are "a variety of defects in Witt's report and methodology, some of which will need to be corrected if and when this case moves forward," but nevertheless finding the model sufficient at the class certification stage because the task at this stage is only "to ascertain whether there is a 'model . . . [that] measure[s] only those damages attributable to [the plaintiffs] theory,' and 'establish[es] that damages are susceptible of measurement across the entire class" (quoting *Comcast Corp.*, 569 U.S. at 35)); *see also Vogt v. State Farm Life Ins. Co.*, No. 2:16-CV-04170-NKL, 2018 WL 1955425, at *5 (W.D. Mo. Apr. 24, 2018) ("The issue [of policy duration] is intertwined with the merits and is not appropriately resolved upon a motion for class certification. It does not bar class certification."), *aff'd,* 963 F.3d 753 (8th Cir. 2020); *Bally v. State Farm Life Ins. Co.*, 335 F.R.D. 288, 299–300 (N.D. Cal. 2020) (rejecting State Farm's challenges to Witt's damages model as factual disputes irrelevant at the class certification stage where State Farm argued that the model was not sufficiently tied to the theory of lability, that it did not differentiate properly between mortality rates, that it improperly would result in a higher rate for some policyholders, that it would create intra-class conflicts, and that it did not account for policyholders who had already received a death benefit); *Whitman v. State Farm Life Ins. Co.*, No. 3:19-CV-6025-BJR, 2021 WL 4264271, at *9 (W.D. Wash. Sept. 20, 2021) (finding the reasoning of *Vogt* and *Bally* persuasive and finding that State Farm's challenge to Witt's model goes to the merits of the case and does not defeat class certification). This Court now follows suit and finds Witt's methodology sufficient at the class certification stage for the breach of contract claims as well as conversion.

Finally, Defendant argues that "commonality cannot exist where KCL has asserted defenses of statute of limitations, waiver, ratification, laches, and standing, which require individualized inquiries." ECF 88, at 23; *see id.* at 35 (reiterating this argument in the context of

predominance). The only affirmative defense Defendant seriously addresses is statute of limitations, so the Court will not address the others. Defendant argues that Plaintiff's claim is barred by the statute of limitations because he inquired about the COI charge to the Maryland Insurance Administration over three years before initiating this suit. *See id.* 26.

The Fourth Circuit has "flatly held that 'when the defendants' affirmative defenses ... may depend on facts peculiar to each plaintiff's case, class certification is erroneous.'" *Gunnells*, 348 F.3d at 438 (quoting *Broussard,* 155 F.3d at 342). But "[w]hile the Fourth Circuit may take a stricter approach compared to other circuits," this does not mean that just any individualization will defeat predominance. *See In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 341 F.R.D. at 157. "To defeat class certification, a defendant must show some degree of likelihood a unique defense will play a significant role at trial." *In re Zetia (Ezetimibe) Antitrust Litig.*, 7 F.4th 227, 237 (4th Cir. 2021) (quoting *Beck v. Maximus, Inc.*, 457 F.3d 291, 300 (3d Cir. 2006)).

As noted above, McMillan first inquired with KCL about the decreasing values of his policy in 2010. *See* ECF 90-6. He then then filed a complaint with the MIA in 2016, ECF 90-7, at 2, and received a response, ECF 90-8, at 2–4. Plaintiff's complaints centered on his increasing premiums and the forecasted expiration of his policy. Defendant argues that these complaints put him "on notice of his claims," especially considering he had copied his attorney on the complaints, subjecting him to a unique statute of limitations defense not applicable to other putative class members. ECF 88, at 26. While an admittedly close call, the Court disagrees.

The alleged breaches of contract here concern the overinflation of the COI *rate*. Numerous other courts have held that rising COI rates are not sufficient to put a policyholder on notice of a breach resulting from circumstances similar to those here. *See Vogt v. State Farm*

28

*Life Ins. Co.*, 963 F.3d 753, 765 (8th Cir. 2020) (affirming summary judgment on the statute of limitation questions and explaining that "[a]lthough a reasonably prudent person might have had some suspicions about the rising COI fees, this alone would be insufficient to put such a person on notice and trigger the running of the statute of limitations"); *Jaunich v. State Farm Life Ins. Co.*, 569 F. Supp. 3d 912, 918 (D. Minn. 2021) ("[N]o court to consider this issue has found that a policy owner could have discovered the wrongful conduct."); *Millwood v. State Farm Life Ins. Co.*, No. 7:19-CV-01445-DCC, 2022 WL 4396199, at *5 (D.S.C. Sept. 23, 2022) (collecting cases).

This is true even if the policyholder inquired about his policy. In *Whitman v. State Farm Life Ins. Co.*, the Western District of Washington determined, at the class certification stage, that a policyholder who had made inquiries about his policy was not barred from bringing his claim because "[t]here was no indication that Plaintiff suspected that State Farm was improperly calculating the COI rate at the time or that Plaintiff ever received an answer to his question." 2021 WL 4264271, at *8. The Eighth Circuit has also explained, "as the enumerated factors in the COI provision are mortality factors, it could have reasonably been assumed that the rising COI fees were related to [the policyholder's] increasing age and less favorable mortality outlook, rather than State Farm's inclusion of additional factors in the COI fees." *Vogt*, 963 F.3d at 765. Defendant makes no effort to distinguish the plethora of cases finding that similar statute of limitations defenses did not defeat predominance. In essence, McMillan's inquiries do not put him in a position different from any of the other putative class members because his complaints and inquiries did not put him on notice that KCL was using unlisted factors and expenses in

calculating the COI rate.[13]  Thus, KCL's statute of limitations defense as to McMillan does not defeat a finding of predominance.

For these reasons, the Court is satisfied, as were the *Fine* and *Meek* courts, that Plaintiff has presented sufficient evidence to establish common questions of law and fact that can be resolved using common proof and that predominate over the litigation as to each of the three breach of contract claims as well as the conversion claim.

### *iii.    Typicality*

The class representative's claims and defenses must be "typical of the claims or defenses of the class" in that prosecution of the claim will "simultaneously tend to advance the interests of the absent class members." Fed. R. Civ. P. 23(a)(3); *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006).  The named plaintiff's claim "cannot be so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of [her] own individual claim." *Id.* at 466–67.  "In analyzing this question, a court compares the class representative's claims and defenses to those of the absent class members, considers the facts needed to prove the class representative's claims, and assesses the extent to which those facts would also prove the claims of the absent class members." *Amaya*, 326 F.R.D. at 447 (citing *Deiter*, 436 F.3d at 466–67).  Typicality does not require that plaintiff's claim and the claims of class members be "perfectly identical" or "perfectly aligned," but the Court is guided by the notion, "as goes the claim of the named Plaintiff, so go the claims of the class." *Souter v. Equifax Info. Servs, LLC*, 307 F.R.D. 183, 208 (E.D. Va. 2015) (citing *Deiter*, 436 F.3d at 466–67).

---

[13] The Court makes findings of fact here to the extent they are "relevant to the certification question." *Thorn*, 445 F.3d at 319 (citing *Gariety v. Grant Thornton LLP,* 368 F.3d 356, 365 (4th Cir. 2004)).

Plaintiff argues that "[t]ypicality is satisfied here because Plaintiff asserts the same claims individually that he asserts on behalf of the Class." ECF 78-2, at 23. Plaintiff cites numerous cases finding typicality where the class representative and other class members were subject to "materially identical policy language," performed in the same way by the defendant. *See id.* citing *Meek*, 2022 WL 499049, at *11; *Fine*, 2023 WL 7393027, at *4-5; *Millwood*, 2022 WL 4396199, at *6; *Spegele*, 336 F.R.D. at 552; *Hanks v. Lincoln Life & Annuity Co. of N.Y.*, 330 F.R.D. 374, 380–81 (S.D.N.Y. 2019); *Feller v. Transamerica Life Ins. Co.*, No. 216CV01378CASAJW, 2017 WL 6496803, at *8 (C.D. Cal. Dec. 11, 2017)).

Defendant's argument on typicality focuses on McMillan's former occupation as a sales agent for KCL, the fact that McMillan let his policy lapse putting his interests at odds with the those of the other class members, and its statute of limitations defense stemming from McMillan's complaint to the MIA. ECF 88, at 25–27. Further, Defendant's motion to supplement the opposition focuses on McMillan's purported atypicality and inadequacy. *See* ECF 106, at 1 (asserting that McMillan's deposition testimony demonstrates that he "is an atypical and inadequate class representative"). For completeness, the Court will grant Defendant's motion to supplement its opposition and consider its additional arguments as to typicality and adequacy. However, even considering those additional arguments, the Court finds that Plaintiff has sufficiently demonstrated that his claims are typical of the class.

First, the Court has already rejected Defendant's statute of limitations argument and will not repeat the analysis here. As to the argument that McMillan is atypical due to his prior role as a sales agent who sold KCL policies, while this argument appears tempting at first blush, the Court is not so convinced. As noted above, interpretation of the contract, and therefore whether there was any breach thereof, does not turn on the policyholder's subjective view at the time of

executing the policy. Sales agents did not have the authority to modify the terms of the policies they sold. The conduct of any sales agent is irrelevant to any putative class member's claims for breach of contract or conversion against KCL. Defendant has failed to specify how McMillan's prior role is relevant to the claims here or would alter his goals as compared to the rest of the putative class, and the additional briefing in the motion to supplement does not remedy this.

The Court is also not persuaded that letting a policy lapse puts McMillan's interests in conflict with those of the rest of the class to defeat typicality. Defendant's argument is sparse on this point, but the Court assumes KCL to mean that if Plaintiff's claims succeed, some policyholders' rates may go up whereas he would remain unaffected since he is no longer paying for KCL's insurance. This argument has been rejected by other courts considering the same question, and Defendant has not given this Court any reason to diverge from those courts' reasoning. *See Vogt*, 963 F.3d at 767 ("This purported conflict is entirely speculative and is insufficient to render class certification inappropriate because it relies on nothing more than conjecture about how this lawsuit will affect State Farm's future dealings with current policyholders.") (citing *Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 180 (4th Cir. 2010))); *Fine*, 2023 WL 7393027, at *5 (rejecting the same argument); *see also Ward*, 595 F.3d at 180 ("[A] conflict will not defeat the adequacy requirement if it is merely speculative or hypothetical, and in this case, the conflict rests on the uncertain prediction that this lawsuit will cause premiums to increase enough to adversely affect some members of the class." (internal quotation marks and citation omitted)).

Further, Defendant's argument that Plaintiff has failed to cite any evidence in the typicality analysis, taken alone, is unavailing. As noted, commonality and typicality merge, and Plaintiff has cited sufficient evidence in the overlapping prongs to meet the evidentiary burden

here. The Court therefore finds that Plaintiff's claims are typical of the class's such that Rule 23(a)(3) is satisfied.

### iv. Adequacy

Rule 23 requires that the named plaintiff "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem*, 521 U.S. at 625–26 (citations omitted) (cleaned up). The "adequacy" requirement is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed R. Civ. P. 23(a)(4). Adequacy depends on two factors: (1) whether class counsel are qualified, experienced, and generally able to conduct the proposed litigation; and (2) whether the representative's claims are sufficiently interrelated to and not antagonistic with the class's claims as to ensure fair and adequate representation." *Hewlett v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 218 (D. Md. 1997).

As noted above, adequacy overlaps with commonality and typicality, *Broussard*, 155 F.3d at 337, so some of the arguments on this point have already been addressed. Plaintiff argues that adequacy is met because his interests are aligned with those of the class, he has an interest in vigorously representing the class, and he has adequate counsel. *See* ECF 78-2, at 24–26. Defendant counters that adequacy is not met due to the differing policy language, the additional disclosures for VUL policyholders, and the potential that Plaintiff's goals may conflict with other putative class member's whose rates may increase as a result of this litigation. ECF 88, at 28–29. All of these arguments have already been rejected, and the Court finds that for the same reasons, they do not defeat typicality.

Defendant also argues that class counsel is inadequate because "[t]he U.S. Supreme Court has unambiguously concluded that 'an attorney who represents another class against the same defendant may not serve as class counsel.'" *Id.* at 29 (quoting *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 (1999)). However, *Ortiz* involved a limited fund class under Fed. R. Civ. P. 23(b)(1)(B) of which there was no right to opt out. 527 U.S. at 838. Neither this case nor any of the other classes already certified where Plaintiff's counsel here is also class counsel are limited fund classes under Rule 23(b)(1)(B). Thus, *Ortiz* is inapplicable here. Plaintiff has sufficiently demonstrated the adequacy of himself as class representative and of class counsel.

### v. *Superiority*

Under Federal Rule 23(b)(3), the Court must find that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The Court must compare possible alternatives to the class action to determine "whether Rule 23 is sufficiently effective to justify the expenditure of the judicial time and energy that is necessary to adjudicate a class action and to assume the risk of prejudice to the rights of those who are not directly before the court." *Stillmock v. Weis Markets, Inc.*, 385 F. App'x 267, 274 (4th Cir. 2010). Courts consider the following four factors when assessing the superiority of the class action: (1) "the class members' interests in individually controlling the prosecution or defense of separate actions"; (2) "the extent and nature of any litigation concerning the controversy already begun by or against class members"; (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and (4) "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). In addition, the Supreme Court has recognized that, when creating the 23(b)(3) class action mechanism, the Advisory Committee "had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring

their opponents into court at all," due to the potential for only a small recovery. *See Amchem Prods., Inc.*, 521 U.S. at 617 (citation and quotations omitted).

Considering these factors here, the Court has no doubt that a class action is the superior method for litigating the claims here. Defendant argues that "[i]n light of the significant flexibility and control afforded to UL and VUL policyholders to determine how much and how often they pay in premiums, and their varying purposes for purchasing a life insurance product, this case will require over 2,000 individualized inquiries to ascertain the various claims and defenses—all of which make the purported class unmanageable and ill-suited for class treatment." ECF 88, at 36. This is not a serious argument. As explained above, individual subjective inquiry as to how a policyholder executed a standardized life insurance policy are irrelevant to determining the breach of contract and conversion claims. The Court struggles to see "how much and how often [policyholders] pay in premiums" has any bearing on the claims here.

A class action under Rule 23(b)(3) is superior to other methods for adjudicating the controversy. Because Plaintiff has met all of the requirements under Rule 23(a) and (b)(3), the motion to certify the class will be granted.

## III.   CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is **DENIED**, Defendant's motion for leave to supplement is **GRANTED**, McMillan's motion for class certification is **GRANTED**, and the Court **CERTIFIES** the following class:

> All persons who own or owned a Better Life Plan, LifeTrack, AGP, MGP, PGP, Chapter One, Classic, Rightrack (89), Performer (88), Performer (91), Competitor (88), Competitor (91), Executive (88), Executive (91), Protector 50, LewerMax, Ultra 20 (93), Competitor II, Executive II, Performer II, Ultra 20 (96), or Century II VUL life insurance policy issued in the state of Maryland, that was issued or administered by Defendant or its predecessors in interest, and that was active on

or after January 1, 2002. Excluded from the Class are: Defendant Kansas City Life Insurance Company ("KCL"); any entity in which KCL has a controlling interest; any of the officers, directors, or employees of KCL; the legal representatives, heirs, successors, and assigns of KCL; anyone employed with Plaintiff's counsel's firms; and any Judge to whom this case is assigned, and his or her immediate family.

A separate implementing Order will issue.

Dated: January 10, 2025

/s/
Brendan A. Hurson
United States District Judge